AFTER SIX, INC., et al., Appellants, v 201 EAST 66TH STREET ASSOCIATES et al., Respondents.

First Department, June 2, 1982

**APPEARANCES OF COUNSEL**

*Edward L. Sadowsky* of counsel (*Mona D. Shapiro* with him on the brief; *Tenzer, Greenblatt, Fallon & Kaplan,* attorneys), for appellants.

*Steven J. Stein* of counsel (*Francis D. Landrey* with him on the brief; *Proskauer Rose Goetz & Mendelsohn,* attorneys), for respondents.

**OPINION OF THE COURT**

Ross, J.

This is an action seeking specific performance of a subscription agreement to purchase shares of stock pursuant to a co-operative conversion plan wherein Special Term denied plaintiffs-appellants' motion for a preliminary injunction.

The corporate plaintiff is a Pennsylvania corporation engaged in the manufacture of tuxedos and formal wear. On October 3, 1977, the corporate plaintiff entered into a three-year lease for apartment 11E, in the subject building

located at 201 East 66th Street. The leasehold expired on November 30, 1980, and since that time the corporation has remained as a month-to-month tenant. Throughout the entire occupancy, the apartment was rent stabilized and was used to house the corporation's salesmen and executives while they were on business trips to New York.

During the term of plaintiff's tenancy, the building was owned by defendant 20166 Tenants Corporation. The owners decided to convert the premises to co-operative ownership and pursuant thereto, on May 2, 1980, an offering was presented to the tenants in the form of an eviction plan. According to the third amendment, the tenants in occupancy on the date the plan was accepted for filing had until February 19, 1981, to execute a subscription agreement in order to purchase the shares to their respective apartment at the insider's price. The plan, however, provides in part I, that: "This offering is made only to individuals over the age of 21 years and not to corporations, partnerships, trusts, foreign governments or persons acting on behalf of such entities or to tenants having a primary residence elsewhere." The plan goes on to provide in paragraph (f) of the section entitled "Rights of Tenants in Possession" that: "A subtenant will have no right to purchase unless approved by the tenant of record. A corporation or partnership will have no right to purchase; an individual approved by it may purchase." Despite these warnings and on the advice of counsel, the corporate plaintiff on February 19, 1981, executed and mailed a subscription agreement to purchase apartment 11E, on its own behalf. Four days later, the proffered subscription agreement was rejected by the attorneys for the sponsors, the defendant 201 East 66th Street Associates (Associates).

Thereafter, by letter dated May 18, 1981, the corporate plaintiff designated the individual plaintiff, Harry Lebow, to purchase the apartment. The apartment corporation rejected this designation and the shares of stock allocated to the subject apartment have never been offered to Lebow. On September 21, 1981, Associates elected to terminate the corporate plaintiff's tenancy as of October 31, 1981. The plaintiffs then commenced the instant action seeking, *inter alia,* specific performance of the subscription agree-

ment; a direction to defendants to deliver to the plaintiff the shares of stock allocated to the apartment; and a preliminary and permanent injunction enjoining the defendants from conveying the shares allocated to the apartment to any person other than plaintiff. Special Term denied the relief requested. Special Term in denying the motion reasoned, *inter alia,* that since the individual plaintiff's attempt to subscribe as designee of the corporation was untimely, there is little likelihood of success on the merits. In addition, the court found that if the shares of stock are sold to a third party, the plaintiffs will not be irreparably harmed, having an adequate remedy at law. We agree with the conclusions reached by the court at Special Term and, accordingly, affirm.

The applicable section of the CPLR (6301), pursuant to which plaintiff sought a preliminary injunction, provides that "[a] preliminary injunction *may be* granted in any action" (emphasis supplied). The decision to grant or deny such a request lies within the sound discretion of the trial court. In the absence of unusual or compelling circumstances, this court is reluctant to disturb said determination, unless of course, it can be demonstrated that the court abused its discretion. The plaintiffs, as movants, were required to demonstrate a likelihood of ultimate success on the merits, irreparable harm and that trial equities of the situation were in their favor (*Albini v Solork Assoc.,* 37 AD2d 835). The relief requested by plaintiff has been frequently described as a "drastic remedy", one in which the plaintiffs must demonstrate they have a clear right to said relief. (See, e.g., *Rohauer v Killiam,* 37 AD2d 547.) The plaintiffs have failed to meet this burden.

The conversion plan provided that a corporate occupant was not eligible to purchase, but an individual designated by the corporation was permitted to purchase. The purchaser, whether an individual tenant in occupancy or a corporate designee, had to execute a subscription no later than February 19, 1981. In addition, the third amendment to the offering plan provided that: "After expiration of said [time frame] offerees will have no further right to subscribe to purchase the shares allocated to their apartments". In a letter dated May 18, 1981, the corporate

plaintiff authorized Harry Lebow to purchase the apartment. This attempt to comply with the corporate designation clause of the offering plan was approximately 90 days late. By that time, After Six had already been divested of its right to purchase at the insider price. The notification was unquestionably not timely; therefore, the defendants were within their rights to reject said designation. Under these facts, it is clear that plaintiffs have failed to demonstrate a likelihood of ultimate success on the merits and, accordingly, a clear right to the relief has not been shown.

In addition, no irreparable harm to plaintiffs has been shown. This apartment was being utilized by the employees of the corporate plaintiff on a short-term itinerant basis. No one will lose his or her residence as is contemplated by the Rent Stabilization Law. If it is later determined that plaintiffs should prevail, damages are readily ascertainable in an action at law. The co-operative corporation may still be willing to sell this apartment, or any other apartment in this building, at the then prevailing market price to an individual, such as Lebow. The issue, therefore, becomes at what price should Lebow purchase — the insider price or at market value. If forced to purchase at the higher price, and if the plaintiffs can prove their action at law, the measure of damages can be easily calculated; for example, the difference between what an insider would have paid and the actual price. Clearly plaintiffs have adequate protection and the injunction should not issue (*Gulf & Western Corp. v New York Times Co.,* 81 AD2d 772).

Accordingly, the order of Supreme Court, New York County (GREENFIELD, J.), entered November 25, 1981, which denied plaintiffs' motion for a preliminary injunction to bar defendants from selling or offering for sale, the shares of stock to apartment 11E, at 201 East 66th Street, to anyone other than plaintiffs, should be affirmed, with costs.

LYNCH, J. (dissenting). In 1977, the plaintiff corporation leased an apartment in the defendants' building for the use of visiting executives, salesmen, and the like. The lease expired in November, 1980, but the plaintiff corporation has remained as a month-to-month tenant. On May 2,

1980, an eviction plan seeking to convert the apartment building to co-operative ownership was offered to the tenants. Paragraph (f) provides that, while a corporate tenant in possession shall have no right to purchase an apartment, an individual approved by the corporation may purchase.

According to the defendants, the last day for a tenant to subscribe to the plan, after its final amendment, was February 19, 1981. On that day the plaintiff corporation executed and mailed a subscription agreement on its own behalf. On February 23 the defendants rejected it, claiming that it was untimely because they had not received it on the 19th and that the plaintiff, being a corporation was an ineligible subscriber. On May 3, the plaintiff corporation designated the plaintiff Lebow as its approved purchaser. The defendants rejected this subscription as untimely.

The defendants sent the plaintiff corporation in the following September a notice of their election to terminate the month-to-month tenancy in October. The plaintiffs countered with an action for specific performance of the subscription agreement and moved for a preliminary injunction to preserve the *status quo*. Special Term denied the motion. It felt that the Code of the Real Estate Industry Stabilization Association of New York City, Inc. (Rent Stabilization Code), in which the eviction plan has its genesis, was intended to protect individuals, not corporations, and that the plan itself spoke only in terms of individuals. Special Term found it unlikely that the plaintiffs could prove that the corporation had a right to subscribe on its own behalf. It did not decide whether the corporate subscription was timely, but it held that the corporate approval of Lebow as its designee subscriber was untimely. Special Term found also that there was no irreparable harm since no one person was actually living in the apartment and, hence, no one was losing a home. It saw the controversy as one over the profit that could be made on the sale of the apartment at the market price, for which money damages could wholly compensate the plaintiffs. We disagree with these conclusions and find the denial of a preliminary injunction to have been an abuse of discretion. The plaintiffs have demonstrated their likely success, the

threat of irreparable injury, and the balance of equities in their favor (see *Albini v Solork Assoc.*, 37 AD2d 835).

The defendants' eviction plan concedes that any inconsistency between it and the Rent Stabilization Code must be resolved in the latter's favor. An inconsistency is presented between the plan's denial of subscription rights to a corporation and section 61 (subd 4, par [b]) of the Code. That subdivision grants a first right of subscription to a "tenant in occupancy at the time of the offering". It is unquestioned that the plaintiff corporation was in occupancy at the time of the offering and the plan's proscription of the corporation must give way to the latter's right under the Code.

Paragraph (a) of subdivision 4 of the same section of the Code provides that an eviction will become effective only when 35% of the "tenants then in occupancy" have agreed to subscribe. Five clauses of subdivision 4 (par [a]) set forth rules for computing the necessary percentage. Clause (v) provides "Purchases by the tenant of record of a subleased apartment will be included; sub-tenants will have no right to purchase unless approved by the tenant of record and only then would purchases by sub-tenants be included; purchases of apartments leased to a Corporation or Partnership will be included if purchased by an individual approved by said Corporation or Partnership."

The defendants would have us apply the limitation on tenants in occupancy found in paragraph (a) of subdivision 4 to the right of subscription granted to tenants in occupancy, without limitation, in paragraph (b) of subdivision 4. We are constrained, however, to avoid judicial legislation (*Matter of Thomas*, 216 NY 426), and to determine the legislative intent from the language used, if possible (*Lawrence Constr. Corp. v State of New York*, 293 NY 634). When this is done, the two paragraphs are readily harmonized. When a corporation is a tenant in occupancy, it has the right to purchase, but its election to purchase cannot be included in the 35% necessary for adoption of the eviction plan. A corporation may, however, approve an individual to purchase its apartment, in which case the purchase may be included in the 35%.

The defendants point out that the subtenant limitation in the above-quoted clause of section 61 (subd 4, par [a]) has been held in effect to be a limitation on the class of tenants in occupancy under paragraph (b) of subdivision 4 (see *Thuna v Di Sanza,* 102 Misc 2d 342, affd 78 AD2d 517; *Willis v Krull,* NYLJ, Sept. 23, 1981, p 6, col 2). But there is no analogy to be drawn here. First, section 61 (which would include the right to purchase granted under paragraph [b] of subdivision 4) is specifically made inapplicable to subtenants by subdivision 5 of section 61. Second, it is reasonable for the statute to give the exclusive right to purchase to the tenant of record under the primary lease and thus distinguish subtenants from tenants, corporate or not.

The defendants also argue that restricting the plan to individuals is warranted to preserve the co-operative's beneficial tax status, the Internal Revenue Code allowing a flow through of certain deductions to the tenants only if 80% of the co-operative's income is derived from shareholders other than corporations. However compelling or preferable this might be, it cannot be accomplished by unilaterally depriving the corporate tenants in occupancy of rights granted them by the Rent Stabilization Code.

Contrary to the Special Term's finding that the plaintiffs were unlikely to succeed in the underlying action, we find merit in their contention that the plaintiff corporation had the right to subscribe without having designated an individual purchaser. We also find the corporate subscription was timely. It was mailed and postmarked on the last day for exercising this option. The plan provided only that after this last day there would be no further right to subscribe. There was no express requirement that the subscription had to be received on the last day. There being no direction "inconsistent with an authorization of acceptance by mail", "the contract is completed at the moment the acceptor deposits his letter of acceptance in the post office directed to the offeror's proper address and with the postage prepaid, provided he does so within the proper time and before receiving any intimation of the revocation of the offer" (9 NY Jur, Contracts, §§ 36, 565).

We also find merit in the plaintiff corporation's argument that denial of the preliminary injunction would cause

it irreparable harm. While a proprietary lease and shares in a co-operative building are personalty (*Silverman v Alcoa Plaza Assoc.,* 37 AD2d 166), they do represent a unique form of property ownership having a "real property aspect" which at times "may predominate" (*Matter of State Tax Comm. v Shor,* 43 NY2d 151, 154). This aspect — the use and occupancy of a particular apartment in a particular building for essentially an unlimited period of time — especially should predominate here because it was granted to the plaintiff corporation by statute. This right will be lost if the defendants are able to dispose of the shares prior to the adjudication of the underlying case. The loss of this statutory right would be an irreparable harm, and the defendants should not be able to so easily circumvent the purpose of the Rent Stabilization Code.

The balance of equities favors the plaintiffs. They stand to lose an apparent statutory right to purchase shares in the co-operative building and the substantially unlimited use of the apartment. The defendants, if successful in the underlying action, would lose only a return on their investment during its pendency, a damage readily compensable by a monetary award.

Accordingly, the order of the Supreme Court, New York County (GREENFIELD, J.), entered November 25, 1981, denying plaintiffs' motion for a preliminary injunction to bar defendants from selling or offering for sale the shares of stock allocated to apartment 11E at 201 East 66th Street to anyone other than those plaintiffs, should be reversed, and the motion granted.

MURPHY, P. J., and FEIN, J., concur with ROSS, J.; LUPIANO and LYNCH, JJ., dissent in an opinion by LYNCH, J.

Order, Supreme Court, New York County, entered on November 25, 1981, affirmed. Respondents shall recover of appellants $50 costs and disbursements of this appeal.