EDITORIAL PHOTOCOLOR ARCHIVES, INC., et al., Respondents, v GRANGER COLLECTION, Appellant.

First Department, June 30, 1983

APPEARANCES OF COUNSEL

*Lawrence N. Weiss* of counsel (*Robert M. Cavallo, P. C.* and *Lawrence N. Weiss, P. C.,* attorneys), for appellant.

*A. Rene Hollyer* of counsel (*Bromberg, Gloger, Lifschultz & Marks,* attorneys), for respondents.

### OPINION OF THE COURT

KUPFERMAN, J. P.

The plaintiff, Editorial Photocolor Archives, Inc. (EPA), is in the business of leasing and licensing quality film transparencies and photographs for reproduction in books, magazines, films, etc. Among other things, EPA represents established archives of film and photographs, including that of Scala Instituto Fotografico Editoriale (Scala), a repository located in Florence, Italy, which has photographs and transparencies for most of Europe's major museums. In 1978 Scala granted EPA North American exclusivity for its materials.

The defendant, the Granger Collection (Granger), maintains a similar organization in direct competition with EPA.

In 1982, the plaintiffs, EPA and Scala, commenced this action alleging, as a first cause, that the defendant Granger had appropriated several Scala transparencies of famous works of art, removed the protective frame containing the Scala name and mark from the transparencies and replaced that frame with another bearing the Granger name. It went on to complain that there were 11 such transparencies and that they were wrongfully being held out to the public as items for which Granger held the reproduction rights. It was contended that the acts involved constituted unfair competition and misappropriation against which an injunction was sought.

The second cause of action alleged piracy and appropriation of a business asset acquired by EPA from Scala and enhanced.

A third cause of action alleged violation under the anti-dilution statute, section 368-d of the New York General Business Law.

Injunctive relief, an accounting, compensatory and punitive damages were sought.

With the service of the summons and complaint, the plaintiffs moved, by order to show cause, for a temporary restraining order which was granted upon defendant's default and which restrained Granger from acquiring or altering Scala transparencies or from selling or leasing the reproduction rights thereto.

Thereafter, the plaintiffs' attorney wrote to the defendant informing it of the restraining order pending a determination of the motion for a preliminary injunction, which preliminary injunction was thereafter granted on default. Granger then moved to vacate the preliminary injunction and asserted affirmative defenses, among which was that the State court had no jurisdiction over the subject matter, because the three causes of action were grounded in copyright law and that, therefore, the field was pre-empted. Another affirmative defense was that the transparencies were in the public domain available for anyone's use.

As to the default, it was contended by the defendant that it did not realize the time factor that was involved, and that due to irreparable harm, the preliminary injunction should be vacated.

The court at Special Term considered the matter as one to vacate the default in opposing a motion for a preliminary injunction and excused the default, but denied the motion to vacate.

It is in this posture that the matter comes before us on appeal.

The pre-emption provision with respect to the law of copyright (US Code, tit 17, § 301) has, as an exception thereto, "(b) * * * (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106."

The purpose of the pre-emption was to bring some system of order into the protection of the copyright interest so that, among other things, State jurisdiction under common-law copyright should be subsumed by the Federal jurisdiction. (See Mentlik, Federal Preemption in the Field of Intellectual Creations — An End to the Common Law Copyright, 23 ASCAP Copyright Law Symposium 115; Goldstein, Federal System Ordering of the Copyright Interest, 69 Col L Rev 49.) In a similar vein, there has been established a new Court of Appeals for the Federal Circuit for patent matters to avoid substantial differences in the various Federal courts in the results of patent litigation and to provide nationwide uniformity in patent law. (See 37 Record of Assn of Bar of City of NY 732 [Dec., 1982]; Neuner, Patent and Trademark Law, NYLJ, June 8, 1982, p 1, col 1.)

The issue is whether the Federal legislation was intended completely to pre-empt the field. (See *Kewanee Oil Co. v Bicron Corp.,* 416 US 470, 480; *Goldstein v California,* 412 US 546; *Matter of Westinghouse Elec. Corp. v Tully,* 55 NY2d 364, 372; The Preemption Doctrine: Shifting Perspectives on Federalism and the Burger Court, 75 Col L Rev 623, 639; Note, A Framework for Preemption Analysis, 88 Yale LJ 363.)

In *Roy Export Co. Establishment of Vaduz, Liechtenstein v Columbia Broadcasting System* (672 F2d 1095 [CA2d, 1982], cert den __ US __, 103 S Ct 60), the court rejected a claim that the plaintiffs' cause of action for unfair competi-

tion was pre-empted by Federal copyright law. Of course, this was all in the Federal court so that it could be a pendent claim.

In the present situation and in view of the initial default by the defendant, we have a claim which is basically one for unfair competition, passing off and dilution. Until such time as it may be established that there is a substantial copyright question involved, which could not be asserted in the State court, the State court should continue to have jurisdiction. (Cf. *RX Data Corp. v Department of Social Servs.*, 684 F2d 192 [CA2d, 1982];* *Fox v Wiener Laces*, 74 AD2d 549 [concurring opn]; *United States Trotting Assn. v Chicago Downs Assn.*, 665 F2d 781, 785, n 6.) For example, while copying a copyrighted photograph can be an infringement for which cause of action jurisdiction is in the Federal courts, obtaining a copy for the purpose of copying is not necessarily a copyright violation as the physical property has a distinct life of its own apart from the intellectual property. (See *Rohauer v Killiam Shows*, 551 F2d 484, 494, cert den 431 US 949.)

The order of the Supreme Court, New York County (BLYN, J.), entered August 17, 1982, which denied the defendant's motion to vacate a preliminary injunction entered in the Supreme Court, New York County (B. ALTMAN, J.), on June 21, 1982, should be affirmed with costs.

SILVERMAN, J. (dissenting). This is an appeal from an order of the Supreme Court, Special Term, denying a motion by defendant to vacate a preliminary injunction.

This was error. The preliminary injunction should have been vacated because (a) plaintiffs' claim is essentially a copyright infringement claim, over which the State courts have no jurisdiction; (b) the claim of unfair competition is not established on the facts and amounts to little more than a device to obtain copyright protection in the State court; (c) the balance of hardship does not justify an injunction; (d) if there is any doubt on any of these points, there is still not enough to make out that clear right to relief that is a prerequisite of granting a preliminary injunction.

---

* In this case, the court acknowledged that "even an infringement claim will not invoke federal jurisdiction when the claim is merely incidental to a primary dispute over copyright ownership under state law." (684 F2d, at p 196.)

The basic facts are substantially stated in Justice KUP-FERMAN's opinion.

## I. STATE COURT JURISDICTION

It is undisputed that since January 1, 1978 copyright jurisdiction has been pre-empted by Federal statute and the State courts no longer have jurisdiction even as to common-law copyright. (US Code, tit 17, § 301; tit 28, § 1338, subd [a].)

Subdivision (a) of section 301 of title 17 of the United States Code provides: "§ 301. Preemption with respect to other laws. (a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State."

Section 106 of title 17 of the United States Code therein referred to grants to the owner of copyright "the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work * * * (3) to distribute copies * * * of the copyrighted work to the public * * * by rental, lease, or lending". But copyright — the right to authorize the reproduction of the copyrighted work, or to rent, lease or lend copies of it — is the very core of plaintiffs' complaint and business. As the complaint alleges, the agreement between the two plaintiffs granted Editorial Photocolor Archives, Inc. (EPA) " 'sole and exclusive right in North America to sell, lease or license *reproduction rights* to all SCALA photographs and transparencies'. The Agreement provides that EPA and SCALA shall share 50/50 the net receipts of EPA from the sale, lease or license of *reproduction rights* to SCALA photographs and transparencies" (emphasis added). Plaintiffs' brief refers to "the Scala transparencies whose *reproduction rights* were pirated by defendant-appellant Granger" (emphasis added). The busi-

ness of both plaintiffs and defendant is to maintain archives of millions of pictures, which they then either sell or license for reproduction.

## II. UNFAIR COMPETITION CLAIM

Plaintiffs explicitly maintain they are not suing in copyright but rather for unfair competition.

The factual basis of the claim is suggested to be that defendant somehow improperly acquired some 18 or so slides that belonged to plaintiffs, and that defendant removed the protective frames with Scala's name on it from the slides and replaced it with protective frames bearing defendant's name.

(a) No factual basis has been established for a claim of unfair competition. There is not the slightest evidence or even suggestion that defendant stole or obtained these slides improperly. Plaintiffs' (EPA's president) affidavit states:

"I believe that GRANGER obtained the [plaintiff] SCALA transparencies (from an unknown source) and simply removed the protective frame from around the transparencies (which frame contained the SCALA name and mark) and replaced the protective frame with one bearing GRANGER's name * * *

"While it is possible to purchase slides and photographs directly from SCALA in Italy on an individual use basis, said slides and photographs do not carry with them the right to sell, license, or rent reproduction rights * * * GRANGER, in some fashion, perhaps through the surreptitious purchase of slides which were supposed to be for individual study and use only, has obtained the SCALA transparencies and is now attempting to misappropriate the reproduction rights to those transparencies by wrongfully incorporating them into Defendant GRANGER's photo archive."

It thus plainly appears that plaintiff Scala sells these slides retaining only reproduction rights, i.e., common-law copyright, now a matter for the Federal courts only. ("GRANGER * * * is now attempting to misappropriate the reproduction rights".) Thus it is clear that defendant could

have perfectly legally acquired these slides from someone to whom Scala sold them, or from some successor holder, or from an estate, or by operation of law, etc. There is just no evidence that defendant obtained them improperly.

As to the removal of the frames and the placing on the slides of defendant's own frames, this is a perfectly natural business procedure. In a business like that of the parties where numerous chattels are rented or lent to others, to be returned to the renter or lender, it is surely a common business practice to put the renter's name on the chattels for purposes of identification and proper return. The frame with the renter's name in no way indicates anything but ownership of the physical property. Obviously all parties have millions of photographs and pictures in their archives which they did not create but of which they own the physical property, and of which they indicate ownership of the physical property by a frame with their name on it.

(b) On the law plaintiffs do not establish a claim of unfair competition fairly distinguishable from copyright as to which the State courts retain jurisdiction. The Copyright Act (US Code, tit 17, § 301, subd [a]) pre-empts State laws as to "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright". The statute makes the following exception from pre-emption (§ 301, subd [b]):

"(b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to * * *

"(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106."

Thus the claim of unfair competition must relate to rights "that are not equivalent to any of the exclusive rights within the general scope of copyright".

The Supreme Court has warned that a State "cannot, under some other law, such as that forbidding unfair competition, give protection of a kind that clashes with the objectives of the federal patent laws." (*Sears, Roebuck & Co. v Stiffel Co.*, 376 US 225, 231.) And the same principle must apply to copyrights.

As we have seen, the claim here sought to be protected is based on an attempt "to misappropriate the reproduction rights". This is a claim equivalent to the "exclusive rights within the general scope of copyright", i.e., a right to reproduction.

This is not a case of wholesale unfair reproduction under such special circumstances as were found in *International News Serv. v Associated Press* (248 US 215). So far as appears, we deal here with 18 pictures out of millions.

The removal of the frames does not amount to "palming off". As we have said, there is an obvious legitimate business purpose in putting on owner's identifying frame on the slides. Further "palming off" commonly refers to the tort-feasor's misleading customers into believing that the tort-feasor's product emanates from the plaintiff rather than as here claimed in misleading customers into believing that the product involved emanates from the defendant. (See *Orth-O-Vision, Inc. v Home Box Off.,* 474 F Supp 672, 684, n 12; see, also, Handler, Product Simulation, 64 Col L Rev 1183, 1185-1186.)

Nor can it fairly be argued that the use by defendant of 18 otherwise unidentified slides out of millions of slides of pictures in the archives of each party really dilutes anybody's goodwill or reputation.

### III. BALANCE OF HARDSHIP

In view of the small number of pictures in dispute out of the millions with which the parties deal, the harm to each side, either by granting or denying the injunction, is not terribly large. But of course it can be a great source of harassment and nuisance to defendant to be subject to an injunction and having to pick out which pictures are Scala pictures, and be subject to contempt based on charges that a particular picture is or is not a Scala picture; while as to plaintiffs, money damages would be an adequate remedy.

### IV. CLEAR LEGAL RIGHT

What we have said at least shows that both on jurisdiction and on the merits plaintiffs have failed to demonstrate that they have a clear right to injunctive relief. (*After Six v 201 East 66th St. Assoc.,* 87 AD2d 153, 155.)

V. EXCUSE FOR DEFAULT

Defendant at first defaulted on the motion for a preliminary injunction. Its excuse for the default is of questionable validity. But (a) Special Term accepted the excuse and proceeded to decide the motion on the merits; (b) if the State courts do not have jurisdiction of the subject matter, even express consent, let alone default, cannot confer jurisdiction.

The order of the Supreme Court, New York County (ARTHUR BLYN, J.), entered August 17, 1982 denying defendant's motion to vacate the preliminary injunction should be reversed, on the law and the facts, and in the exercise of discretion, and the preliminary injunction should be vacated with costs to defendant.

ASCH and ALEXANDER, JJ., concur with KUPFERMAN, J. P.; SANDLER and SILVERMAN, JJ., dissent in an opinion by SILVERMAN, J.

Order, Supreme Court, New York County, entered on August 17, 1982, affirmed. Respondents shall recover of appellant $50 costs and disbursements of this appeal.