■ AUSTRIAN LANCE & STEWART, P. C., Appellant, v ROCKEFELLER CENTER, INC., et al., Respondents.—Order, Supreme Court, New York County (Beverly Cohen, J.), entered November 28, 1989, *inter alia,* denying plaintiff's motion for an order preliminarily enjoining defendants from serving a notice of lease termination and tolling the time period of a notice of default (pursuant to *First Natl. Stores v Yellowstone Shopping Center,* 21 NY2d 630), and granting the cross motion to dismiss the action against Rockefeller Center, Inc., unanimously modified on the law, the facts and in the exercise of discretion to the extent of granting plaintiff's motion for a preliminary injunction, reinstating the complaint and otherwise affirmed, and the matter remanded for further proceedings, without costs.

Plaintiff Austrian Lance & Stewart, P. C. (Austrian Lance) is a commercial tenant of the RCA building at 30 Rockefeller Plaza, New York County under a 14-year lease agreement expiring in September 1994. Defendant Rockefeller Center Properties (RCP) is the assignee of the lease from the original lessor Rockefeller Center, Inc. (RCI). In April 1984 RCI

changed its name to Rockefeller Group, Inc. (RGI). In 1984 a fourth entity, incorporated in 1984, then assumed the name Rockefeller Center, Inc. The current RCI as does RCP, maintains 1230 Sixth Avenue, New York City as its address for service of process. In February 1988 the premises were subleased by Austrian Lance to Donovan Leisure Newton & Irvine.

On August 16, 1989, RCP served plaintiff with a notice of default alleging noncompliance under the lease with the compartmentalization requirements of section 27-339 of the Administrative Code of the City of New York, also known as Local Law No. 5 (Local Laws, 1973, No. 5 of City of New York), and giving plaintiff five days to cure the default. Local Law No. 5 requires the subdivision of large office spaces by erecting fireproof walls as barriers to the spread of fire. RCP maintains that this provision of Local Law No. 5 became applicable to the premises in February 1988.

Plaintiff at 5:15 P.M. on August 21, 1989 obtained an order to show cause, staying the cure period, and providing that service on RCI be made by 1 o'clock in the afternoon of the following day. Both the order to show cause and summons with notice named only RCI as a defendant. The amended summons with notice, prepared by plaintiff's counsel during the evening of August 21, 1989, and the complaint dated September 20, 1989 name both RCI and RCP as defendants.

On August 22, 1989 at 10:30 A.M., Jodi Sokol, an attorney employed by plaintiff's counsel, was dispatched to the joint offices of RCP and RGI, located at 1230 Sixth Avenue, to effectuate service. She was kept at bay for several hours by receptionists who stated that Kenneth Perko, an officer and in-house counsel to RGI and general partner of RCP, was the only person authorized to accept service for defendants and that he was not in. One receptionist supported her statement to Sokol that a receptionist was not a proper person to accept service by reading from a copy of a recent court decision to this effect. The decision was conveniently stored under her desk blotter. Sokol's request for the names of other officers, directors or managers of RCI and RCP went unheeded. Before leaving at 1:00 P.M., Sokol, nevertheless, left copies of the order to show cause, summons with notice and amended summons with notice with a receptionist. On August 22, at 12:07 P.M. another attorney for plaintiff transmitted copies of such papers via telecopier to Perko at the offices of RCI and RCP. Copies were also served on Bachner Talley Polevoy

Misher & Brinberg who plaintiff was advised would represent defendants in this matter.

On August 23, at 8:55 A.M. Perko appeared at the offices of plaintiff's counsel and served notice that the lease would be terminated within three days for failure to cure the default. Perko further indicated that he was there "to accept service" and was given a copy of the order to show cause and stay.

On August 24, plaintiff obtained a supplemental order to show cause naming both RCI and RCP, continuing the stay and providing for service by 5 o'clock in the afternoon of that day upon the defendants' receptionist and by mailing. Defendants do not dispute proper service of the supplemental order to show cause.

Because we find that the service of the initial order was adequate and the period of time to cure was tolled, we reverse the IAS court to the extent that it denied to plaintiff a preliminary injunction and dismissed the action.

It is clear that once a lease has been terminated in accordance with its terms, a court is without power to revive the lease. (*First Natl. Stores v Yellowstone Shopping Center,* 21 NY2d 630, 637, *supra; Asherson v Schuman,* 106 AD2d 340, 341 [1st Dept 1984].) Hence, plaintiff was required to obtain injunctive relief prior to expiration of the cure period and before service of notice of termination. (*S. E. Nichols, Inc. v American Shopping Centers,* 115 AD2d 856, 857-858 [3d Dept 1985].)

It is also true that a court may only enjoin parties to an action and that an injunction may not issue against the whole world, but will bind only the parties, those abetting them or those legally identified with them. (*State Univ. v Denton,* 35 AD2d 176, 178-179 [4th Dept 1970].) Nonetheless, a defect in naming or in describing a party may be cured when the papers have given notice of the party intended and no one is misled or prejudiced by the error. (*Matter of Iannelli v Leventhal,* 79 AD2d 562, 563 [1st Dept 1980]; *Gajdos v Haughton Elevator,* 131 AD2d 428 [2d Dept 1987]; *see also, Matter of McCormick v Axelrod,* 59 NY2d 574, 583 [1983], *order amended* 60 NY2d 652 [1983] [respondents held in contempt although not served with order as they were deemed to have had sufficient knowledge, actual or imputed, of terms of the stay].) Here, no confusion has resulted from naming RCI, believed to be the prior landlord, in the order to show cause. It was clear that the relief sought was against the current landlord since a copy of the lease agreement and notice of

default received from the present landlord were attached to the papers. Moreover, RCP and RCI maintain the same agent for service of process. The defendant RCI clearly is an improper party since it was not incorporated until after the previous corporation of the same name had assigned the lease to RCP and itself had changed names. Plaintiffs allege that the present RCI has no employees and that its adoption of the name of the prior owner of the RCA building has created confusion as to the identity of the legal entity which currently owns the building *(see, Roggenburg v Rockefeller Center,* 158 AD2d 332 [1st Dept 1990]). The error in naming RCI was a curable irregularity, having no effect on the injunction's validity.

Secondly, under the facts herein, service upon the receptionist was sufficient. A receptionist generally is not a person authorized to receive service for a corporate defendant. (CPLR 311; *Colbert v International Sec. Bur.,* 79 AD2d 448 [2d Dept 1981], *lv denied* 53 NY2d 608 [1981].) However, when there is evidence that a person authorized to accept service has resisted service, it suffices to leave process in his/her general vicinity. *(Cf., Bossuk v Steinberg,* 58 NY2d 916, 918 [1983]; *McDonald v Ames Supply Co.,* 22 NY2d 111, 115 [1968].)

Attempts to complete service on an officer, director, manager or agent of defendant corporations were diligent. The record suggests that any failure to complete service upon such person resulted from the efforts of RCP and its employees to frustrate service.

In support of plaintiff's August 24, 1989 application for a supplemental order to show cause, Jodi Sokol, the attorney attempting service on RCP on August 22nd, affirmed that at 10:30 she arrived at the office of RGI and RCP, at 1230 Sixth Avenue, New York City and advised a receptionist that she was there to serve papers relating to a court-ordered injunction; that she also told the receptionist that she was required to complete service by 1:00 P.M. that day; that she was informed that Mr. Perko was the only person authorized to accept service for either entity and that his whereabouts were unknown; that clerical employees refused to identify or to contact any other officer, director, manager, or agent upon whom she could make service; that the receptionists refused to provide her with a list of persons working in the office; that two receptionists advised her that they were directed not to accept service and one read to her from a recent court decision to that effect, a copy of which was maintained under her desk blotter; that during the 2½ hours she was there she

heard numerous telephone calls being received and saw numerous visitors arrive, none of whom were told that the party they were seeking was unavailable; that at approximately 12:15 P.M. she was told that Mr. Perko had been informed that she was waiting to serve him with an injunction before 1:00 P.M. and Perko stated that he would not be returning to the office; and that at 1:00 P.M. she placed a copy of the papers on the receptionist's desk and left.

In opposition to plaintiff's motion for a *Yellowstone* injunction and in support of RCP's cross motion to dismiss, Kenneth Perko, who is in-house counsel to RCP, submitted an affidavit in which he states that at 10:30 A.M. on August 22, 1989 he was in the offices of RCP's counsel executing a notice terminating plaintiff's lease. However, Perko does not reveal where these offices are located. He states that he had lunch with an attorney from Quirk & Bakalor and returned to his office for a brief period at 3:00 P.M. Perko maintains that he did not see the papers left by Sokol or the telexed documents until August 23, 1989. Significantly, Perko does not dispute Sokol's claim that he was informed by telephone, sometime before 12:15 P.M., that Sokol was attempting to serve him or another appropriate representative of RCP and RCI.

Also in support of RCP's cross motion, an attorney with Quirk & Bakalor affirmed that Perko met with him on August 22nd but does not say when, other than that they had lunch between 12:15 P.M. and 1:45 P.M. that day. An affidavit by Perko's executive secretary indicates that Perko was not in the office at 12:50 P.M. on August 22, 1989, "having left the office early that morning", but neglects to indicate when he left the office or to answer Sokol's claim that Perko was advised by telephone that Sokol was waiting to serve injunction papers. In sum, no evidence offered by RCP states that Perko was not in RCP's offices for the entire 2½-hour period on August 22, or that he was unaware that plaintiff was attempting to serve him.

It hardly seems possible that in an office such as RCP's there were no other officers, directors, or managers or agents upon whom service could have been made. In view of the time constraints which plaintiff faced, Sokol acted reasonably and with due diligence and the manner of service objectively viewed was calculated to and did give the corporate defendant fair notice. Sokol made appropriate inquiries and did all that she could be expected to do to see that the corporation was properly served. *(Fashion Page v Zurich Ins. Co.,* 50 NY2d 265 [1980].)

In *Dai Nippon Print. Co. v Melrose Publ. Co.* (113 FRD 540 [SD NY 1986]), the District Court, pursuant to Federal Rules of Civil Procedure, rule 4, applied CPLR 311, the law of the forum State, in determining whether the defendant corporation had been properly served with a summons and complaint at its corporate offices in Los Angeles, California. In *Dai Nippon Print. Co.,* a vice-president of defendant Melrose Publishing, upon learning that the process server had legal documents to deliver, walked away from the reception area. The process server then placed the documents on the receptionist's desk and walked away. Citing, *inter alia, Fashion Page v Zurich Ins. Co. (supra)* and *McDonald v Ames Supply Co. (supra)* the court held that given these circumstances, the process server acted reasonably and service was valid. It stated: "The process server was entitled to cooperation from Melrose's employees, including (its) Vice-President * * * Regan v. Tally Ho Trucking Co., 103 Misc.2d at 272, 426 N.Y.S.2d at 727. She acted with due diligence in fulfilling the statutory requirements of §311 and Melrose will not now be allowed to rely on technicalities." *(Supra,* at 544.)

Third, defendant argued below that the first order to show cause was untimely because the cure period expired earlier in the day on August 21st before the order to show cause was signed. The cure period is denoted in days rather than hours and therefore ran until midnight of August 21st. *(See,* General Construction Law § 20.)

Finally we note that a question of fact exists as to whether a cure period of 15 days or of 24 hours was applicable under the lease agreement. Concur—Kupferman, J. P., Sullivan, Milonas, Asch and Smith, JJ.