OPINION OF THE COURT
Diane A. Lebedeff, J.
In this action involving a residential cooperative apartment claimed to be uninhabitable because of leaks and damaged *862 plaster, plaintiff tenants move for a preliminary injunction (CPLR 6301) to enjoin defendant cooperative’s assertion of a right to take possession of and dispose of the shares of stock to satisfy a claim for maintenance charges, which the defendant cooperative desires to exercise, consistent with UCC 9-501, without resort to judicial process.
The plaintiff’s motion raises an apparent conflict between a recognized remedy under the Uniform Commercial Code, one utilized with increasing frequency in relation to cooperative apartments, and well-recognized tenant rights in New York State. Initially, however, inquiry must be made whether the cooperative has enforceable rights under article 9 of the UCC.
Article 9 and Cooperatives
Effective October 1, 1988, chapter 333 of the Laws of 1988 amended section 9-304 (7) of the Uniform Commercial Code, with the intent of easing the problems of obtaining financing for cooperative tenants. The enactment provides a basis for application of secured transaction concepts to cooperative shares and proprietary leases and requires a secured party to complete a filing to perfect the security interest.
It was soon the subject of comment for, as described by Lawrence B. Lipschitz in Impact Of Amendments To UCC On Co-Op Security Interests (NYLJ, Nov. 14, 1990, at 41, col 1), shareholders wanted to take financial advantage of a substantial equity in a cooperative apartment and lenders "wanted to cash in on the untapped 'second mortgage’ co-op market”. The secured transaction approach under article 9 of the Uniform Commercial Code was readily implemented.
One expansion of the remedy was the use of the UCC to enforce the obligation to pay maintenance. To date, such cases have generally sprung from larger real estate transactions, rather than cases involving an individual cooperative tenant. For example, the remedy was used as a vehicle for obtaining possession of a sponsor’s shares (Swartwood v 222 E. 57th St. Owners, NYLJ, Jan. 31, 1991, at 27, col 1 [Sup Ct, NY County, Huff, J.]; 160 Bleecker St. Assocs. v 160 Bleecker St. Owners, NYLJ, Aug. 22, 1990, at 22, col 3 [Sup Ct, NY County]). The New York State Attorney-General approved the utilization of the practice (see, Attorney-General Cooperative Policy Statement No. 6, discussed by Alvin I. Apfelberg, Outside Counsel: Attorney General’s New Policy Helps Co-Op/Condo Industry, NYU, Jan. 2, 1991, at 1, col 1, reporting the procedure would *863 reduce red tape and "should be applauded by all segments of the real estate industry”).
As could be readily foreseen, article 9 has been applied in a suit by a lender against an individual shareholder. Justice Greenfield in Brodsky v 136 E. 64th St. Corp. (NYLJ, Nov. 21, 1990, at 22, cols 1, 3 [Sup Ct, NY County]) noted as follows: "The [plaintiffs’] failure to make payments on their loan affects not only the parties involved in this action, but also other shareholders. When members of a cooperative default, it becomes more difficult for the cooperative to meet its financial obligations and it itself may face foreclosure. The members of a cooperative are reliant upon the financial strength and honesty of its fellow members”. Justice Greenfield rejected an argument of unconscionability, dismissed the shareholder’s complaint and denied a preliminary injunction on the ground of mootness.
As article 9 is applied to emerging questions involving cooperative apartments, the basic concepts of that article remain significant. The shares constituting ownership of a cooperative apartment and a proprietary lease are chattel real or personalty, not realty (Matter of State Tax Commn. v Shor, 43 NY2d 151 [1977]). There must be a "security interest” as defined in UCC 1-201 (37): " 'Security interest’ means an interest in personal property or fixtures which secures payment or performance of an obligation * * * Unless a lease * * * is intended as security, reservation of title thereunder is not a 'security interest’ * * * Whether a lease is intended as security is to be determined by the facts of each case”. The provision supports the well-respected principle that a lease is not automatically a security agreement (see, Xerox Corp. v Smith, 67 Misc 2d 752 [Civ Ct, NY County 1971, Wallach, J.]), and that the character of the agreement and the intent of the parties must be weighed (Mileasing Co. v Hogan, 87 AD2d 961 [3d Dept 1982]). The 1988 amendment does not change these concepts in relation to cooperative stock certificates and a proprietary lease, for section 9-104 (j) states a security interest is excluded "except to the extent that provision is made * * * for a security interest”.
Accordingly, in relation to a cooperative unit, it remains important to examine the relevant documents and transactions. If there is a security interest relevant to a cooperative unit, article 9 remedies are available, which were summarized in Fundex Capital Corp. v Reichard (172 AD2d 420, 421 [1st Dept 1991]), as follows: "[The creditor’s remedy] is thus gov *864 erned by the procedure for enforcement of a security interest (UCC art 9), rather than the procedure for summary recovery of real property (RPAPL art 7). The security interest became enforceable by reason of the debtors’ signed security agreement describing the collateral * * * their receipt of value * * * and their clearly identifiable rights in the collateral (possession of the shares and occupancy of the apartment). (See, UCC 9-203 [1].) When a debtor whose obligation is so secured defaults, the secured party has the right to 'reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure’ (UCC 9-501 [1]).” Additionally, the creditor may perfect its security interest by taking physical possession of the stock certificate and proprietary lease (Brief v 120 Owners Corp., 157 AD2d 515 [1st Dept 1990]).
Here, the cooperative does not advance a security agreement nor does it demonstrate that it has filed the agreement. The relevant proprietary lease clauses refer to a conditional limitation and the cooperative’s ability to issue substitute shares and a lease. The clauses do not refer to a security interest. However desirable recourse to article 9 might be, a cooperative must demonstrate entitlement to article 9 rights, which it has not done here. A claim of arrears in maintenance, standing alone, does not give rise to the remedies of article 9 of the UCC.
This threshold issue is significant here for, where there is a demonstrated default in a secured transaction involving a cooperative unit, courts have declined to issue a preliminary injunction staying the recourse to article 9 remedies (see, Swartwood v 222 E. 57th St. Owners, supra; 160 Bleecker St. Assocs. v 160 Bleecker St. Owners, supra; Brodsky v 136 E. 64th St. Corp., supra). It may well be that a preliminary injunction might issue only under UCC 9-507, which is applicable if the secured party proceeds improperly.
Based on the foregoing, on the record presented to this court, the cooperative has not advanced sufficient proof that it is a secured party and the court shall consider the request for a stay under applicable law.
Defenses of a Cooperative Tenant
Plaintiffs Neil Saada (Saada) and Michael Kilburn are tenant shareholders of 310 Riverside Drive, Manhattan, apartment 2502, a two-room penthouse apartment. They urge they *865 expended approximately $45,000 in renovations and that the apartment was purchased for Saada to utilize as his New York City residence.
On December 26, 1990, the cooperative served plaintiffs with a notice of default for their failure to pay maintenance arrears in excess of $17,000. On March 7, 1991, a notice of termination of the proprietary lease was served, to become effective on March 17, 1991. Prior to the effective date of the notice, plaintiffs commenced this action with an order to show cause, seeking preliminarily to enjoin defendant from terminating their lease.
In the complaint, plaintiffs allege defendant’s breach of the warranty of habitability (Real Property Law § 235-b). They claim two months after its purchase and renovation, the apartment was rendered uninhabitable and untenantable from water from heavy rains and a leaking pipe, which also caused property damage. They assert tenant shareholders of a cooperative corporation enjoy an implied covenant of warranty of habitability which entitles them to claim an abatement of maintenance (see, Suarez v Rivercross Tenants’ Corp., 107 Misc 2d 135 [App Term, 1st Dept 1981]; McMunn v Steppingstone Mgt. Corp., 131 Misc 2d 340 [Civ Ct, NY County 1986]).
The implied warranty of habitability is breached if "in the eyes of a reasonable person, defects in the dwelling deprive the tenant of those essential functions which a residence is expected to provide” (Park W. Mgt. Corp. v Mitchell, 47 NY2d 316, 328 [1979]). Leaks and damaged plaster have long been recognized as falling under the warranty (Century Apts. v Yalkowsky, 106 Misc 2d 762 [Civ Ct, NY County 1980]).
While the extent of the defective conditions remain an issue, the affidavits and evidentiary proof before this court indisputably raise a prima facie showing of a violation of the warranty of habitability. Although the landlord contends plaintiffs did not give proper notice of the condition of the apartment by registered mail, there is a strong factual showing that the corporation was well aware of the conditions, including but not limited to, by advice from plaintiffs’ lender, following an inspection, that it found the apartment uninhabitable, references to leaks in the cooperative’s shareholder publication, and defendant’s financial statements indicating extensive masonry and waterproofing work. However, the cooperative does advise that plaintiffs’ renovations were with *866 out the cooperative’s permission and plaintiffs may have contributed to the damage.
A preliminary injunction lies within the sound discretion of the court (see, Matter of Gerges v Koch, 62 NY2d 84 [1984]), and is a drastic remedy not awarded lightly (Chrysler Corp. v Fedders Corp., 63 AD2d 567 [1st Dept 1978]). It must be predicated upon a clear showing of a likelihood of success on the merits, irreparable injury and a balancing of the equities in plaintiff’s favor (Grant Co. v Srogi, 52 NY2d 496 [1981]; Albini v Solork Assocs., 37 AD2d 835 [2d Dept 1971]). A preliminary injunction is not to be utilized if the claimed wrong is fully compensable by money damages (After Six v 201 E. 66th St. Assocs., 87 AD2d 153 [1st Dept], appeal dismissed 57 NY2d 835 [1982]; Fair Sky v International Cable Ride Corp., 23 AD2d 633 [1st Dept 1965]).
A rent abatement is no more than a claim to money damages. However, a warranty of habitability defense has been recognized as indicating a likelihood of success and a partial basis for a preliminary injunction (Bullard v Whitehall Realty Co., 112 AD2d 826, 827 [1st Dept 1985]). Further, in the same case, as well as in Sachellaridou v Pasent Realty Co., 104 AD2d 764, 766 [1st Dept 1984]), both involving cooperative conversion rights, the loss of rights to an apartment has been viewed as an irreparable harm.
It does not appear necessary to resolve these issues for, in the landlord-tenant context, there is a specialized preliminary injunction available, generally utilized when seeking a toll of the running of a cure period and stay the expiration of the lease, termed a Yellowstone injunction because enunciated in First Natl. Stores v Yellowstone Shopping Center (21 NY2d 630 [1968]). Absent such an injunction, a court has no power to revive a lease terminated in accordance with its terms (supra, 21 NY2d, at 637; Asherson v Schuman, 106 AD2d 340, 341 [1st Dept 1984]; Austrian Lance & Stewart v Rockefeller Center, 163 AD2d 125 [1st Dept 1990]). A Yellowstone injunction is generally granted when a "plaintiff face[s] the threat of forfeiture and termination of the lease” (Total Spectrum Mfg. v Frassetto, 172 AD2d 747 [2d Dept 1991], citing Post v 120 E. End Ave. Corp., 62 NY2d 19, 25-26 [1984]; Garland v Titan W. Assocs., 147 AD2d 304 [1st Dept 1989]; Mann Theatres Corp. v Mid-Island Shopping Plaza Co., 94 AD2d 466 [2d Dept], affd 62 NY2d 930 [1984]).
Although a species of injunctive relief, such a stay may be *867 "measured under the test for a Yellowstone injunction or measured under the traditional test for a preliminary injunction” (East 4th St. Garage v L.B. Mgt. Co., 172 AD2d 292 [1st Dept 1991] [citations omitted]). A Yellowstone injunction preserves the status quo without regard to likelihood of success on the merits (Post v 120 E. End Ave. Corp., supra; Stuart v D & D Assocs., 160 AD2d 547 [1st Dept 1990]). It has also been used to prevent an acceleration of an entire debt where a forfeiture may be an unconscionable penalty and equitable principles come into play (see, Tunnell Pub. Co. v Straus Communications, 169 AD2d 1031 [3d Dept upon transfer from 2d Dept 1991]).
Certain showings must be made by an applicant for a Yellowstone injunction. As described in Pergament Home Centers v Net Realty Holding Trust (171 AD2d 736, 737 [2d Dept 1991]), the elements are as follows: "A leaseholder seeking Yellowstone relief must demonstrate that it holds a * * * lease, that it has received from the landlord a notice of default, a notice to cure or a threat of termination of the lease and that it has the desire and ability to cure the alleged default by any means short of vacating the premises (see, Suarez v El Daro Realty, 156 AD2d 356, 358; Linmont Realty v Vitocarl, Inc., 147 AD2d 618; Heavy Cream v Kurtz, 146 AD2d 672; Continental Towers Garage Corp. v Contowers Assocs. Ltd. Partnership, 141 AD2d 390).” Such an application must, as here, be timely made and sought prior to the expiration of the cure period (S. E. Nichols, Inc. v American Shopping Centers, 115 AD2d 856, 857 [3d Dept 1985]; Ritz Entertainment Org. v Unity Gallega, 166 AD2d 186 [1st Dept 1990]).
Although generally applicable to commercial tenancies, Yellowstone injunctions have been granted in relation to residential units (see, for a recent example, Seligmann v Parcel One Co., 170 AD2d 344 [1st Dept 1991]). A Yellowstone injunction is particularly appropriate here, for this proprietary lease speaks of a conditional limitation, which is contrary to public policy in relation to residential tenancies (see, for example, Park Summit Realty Corp. v Frank, 107 Misc 2d 318 [App Term, 1st Dept], affd 84 AD2d 700 [1st Dept], affd 56 NY2d 1025 [1982]; 520 E. 86th St. v Leventritt, 127 Misc 2d 566 [Civ Ct, NY County 1985]). Accordingly, the court finds a Yellowstone injunction would be consistent with the public policy of this State as applicable to residential housing when asserted against the landlord.
As a condition of a Yellowstone injunction, the court may *868 require a financial undertaking and other restriction (see, 1286 RR Operating v McAlpin Assocs., 169 AD2d 450 [1st Dept 1991]; 7 W. Foods v Forty-Seventh Fifth Co., 109 AD2d 658 [1st Dept 1985]). Consistent with 61 W. 62nd Owners Corp. v Harkness Apt. Owners Corp. (173 AD2d 372 [1st Dept], citing CPLR 6212 [b]), Margolies v Encounter, Inc. (42 NY2d 475 [1977]), and Weitzen v 130 E. 65th St. Sponsor Corp. (86 AD2d 511 [1st Dept 1982]), a bond must be set which is "rationally related to the quantum of damages which plaintiff would sustain in the event [movant] is later determined not to have been entitled to the injunction.”
In addition, payment of use and occupancy shall be required (61 W. 62nd Owners Corp. v Harkness Apt. Owners Corp., supra; Calvert v Le Tam Realty Corp., 118 AD2d 426 [1st Dept 1986]). Based upon the court’s review of the material submitted on the motion, which included photographs, the order to be settled shall provide for payment in the amount of 50% of the maintenance, as a condition of the continuation of the injunction. As is a common practice, the temporary restraining order is vacated to the extent that the cooperative may proceed to issue a notice of termination for the sole purpose of commencement of a summary proceeding.