Bergan, J.
Petitioner, a charitable corporation maintaining a home for the care and maintenance of aged and infirm sailors, has obtained judgment in these tax review proceedings annulling assessments on its property on Staten Island levied by the City of New York for the years 1960 to 1968.
The ground for annulment stated in petitioner’s successful motion for summary judgment is that in each tax year the City Tax Commission ‘ ‘ intermingled on the assessment rolls property which concededly is exempt with property deemed by it [the commission] to be taxable, without identification as to each ”. This statement in the notice of motion for judgment is *447 a succinct summary of the ground for invalidity pleaded in the second cause of action in the respective petitions for review.
The city concedes that a portion of petitioner’s real property in Staten Island, which is about 80 acres in area, is used for the charitable purposes for which the corporation was organized; but it contends that a portion of it is not actually used for those purposes. This portion of the property, the city argues, is taxable to the petitioner and may not be held unused indefinitely free from tax.
The land was acquired between 1831 and 1894, and the city suggests that it had learned before 1960 of the possibility of a long-term lease by petitioner of portions of the property for commercial purposes; whereupon the commission continued exemption as to only part of it. Prior to 1960 the entire property had been entered on the rolls as exempted by the commission.
How much of petitioner’s property is actually used, and how much not used, for its charitable-purposes are issues which need not be decided if, as the Appellate Division held, the entire assessment is void because the exempt and nonexempt portions were not properly segregated. But if it be held that the segregation was proper in form on the tax roll, the accuracy of apportionment based on actual use will become a triable issue in the proceeding.
The statute governing the form of assessment of real property partly exempt and partly subject to tax is section 502 (subd. 5) of the Real Property Tax Law, which provides in pertinent part: “ If a parcel of real property is partially exempt, it shall be entered with the taxable property, with the amount of the exemption shown in a separate column. ’ ’
This provision had its origin in 1916 following the decision in People ex rel. Catholic Union of City of Albany v. Sayles (157 N. Y. 679, affg. 32 App. Div. 203), which held taxing authorities had the right to assess the exempt portion of real property with the taxable portion as a single unit.
That statute (L. 1916, ch. 323, § 7) directed that a separate part of the assessment roll should be provided for property that is entirely exempt from taxation.
It stated further: “If the property is partially exempt it shall be listed with the taxable property.” This language was continued as part of the former Tax Law (§ 21, subd. 5) until *448 in 1958, in the general revision which led to Real Property Tax Law, the phrase now in the statute was added: ‘ ‘ with the amount of the exemption shown in a separate column ’ '
The assessments involved in these proceedings followed the statute literally. The assessment was listed in a part of the roll with the taxable property. The total value of the land and improvements was shown; the value of the land and improvements ‘ ‘ exempt from tax ’ ’ was stated; and the value of the land and improvements “ subject to tax ” was stated. These were set forth in separate columns.
Petitioner argues that the assessors must identify and locate physically the exempt and nonexempt portions of the assessment. This argument is mainly based on the provision of section 502 (subd. 2) that an assessment for each separately assessed parcel shall contain “ a description sufficient to identify the same ”. But this language obviously is addressed to a whole parcel as an entity separately assessed. The direction was followed literally in this case by describing the whole parcel as “ Block 76 Lot 1 ”.
A partial exemption of ‘ ‘ a parcel ’ ’ of real property under subdivision 5 is not a “ separately assessed parcel ” under subdivision 2. The whole parcel is the unit separately assessed. The exemption apportions a tax responsibility within the whole parcel which has been separately assessed. There is no need, then, on a fair reading of the statute, to require the assessors to describe by metes and bounds or other physical factors the portion which is exempt and the portion which is taxable. The statute requires that ‘ ‘ the amount of the exemption ’ ’ be stated. This means a sum in money and not a physical description.
There are intrinsic difficulties in fairly making this kind of a partially exempt assessment on a parcel of real property which in any case should lead a court to give due weight to the pragmatic method followed by officials charged with the duty of fixing the ‘ ‘ amount ’ ’ of exemption.
Sometimes parts of buildings owned by charitable corporations are used for corporate purposes and parts rented for income. It would be an obstacle of almost insurmountable difficulty for assessors looking at the building to make an accurate physical allocation of space. This is just- as true of land which is used and of land which is not used for charitable purposes over a long period, as in this present case where portions of it seem to have been held fallow for a century or more.
*449 The reasonable thing for assessors to do in this situation, following the words of the statute, is to fix what they deem the “ amount ” of the exemption. If this is unfair or inaccurate it can be corrected after a trial of the proceeding. Normally the owner would know more about the actual apportionment than anyone else, and the subject is fully within the court’s power to review.
Petitioner argues also that if there is no differential physical allocation of the exempt and the nonexempt portions a resulting tax lien would attach to the entire parcel and the exempt as well as the nonexempt portion would be sold. This seems an inescapable consequence of owning property on which a partial exemption is claimed and allowed.
The alternative is that a tax lien could attach to one floor of a building which might be sold for nonpayment of taxes while the owner retained title to other floors; or the land surrounding buildings might be sold but the buildings remain unaffected.
The basic problem is not different in tax cases from other forms of partial exemption, e.g., the exemption from execution afforded a homestead; or household furniture (CPLR 5205, 5206). The usual rule in those situations is that the. lien is enforceable to the extent the value of property to which the lien attaches exceeds the exemption.
If there is a sale the owner is entitled to the amount of the exemption (Peck v. Ormsby, 55 Hun 265; Tuckman v. Hayward, 26 Misc 2d 45). Nothing decided in People ex rel. Buffalo Burial Park Assn. v. Stilwell (190 N. Y. 284) or in Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton (1 N Y 2d 508) has any effect on the present problem.
The allocation between exempt and nonexempt portions of the petitioner’s parcel is in conformity with the statute and thus the order of the Appellate Division annulling the assessments in their entirety from 1960 to 1968 should be reversed and the motion of petitioner for summary judgment should be denied.
Since summary judgment was granted by the Appellate Division and since reversal means either that the motion for summary judgment should be denied on the merits, or, as the court at Special Term held, that the motion for summary judgment is not available in a proceeding for review under article 7 of the Real Property Tax Law, it seems useful also to decide that *450 question. The Tax Commission argues that the motion for summary judgment is not proper in the proceeding.
When section 720 of the Beal Property Tax Law, which governs judicial action in this special tax proceeding, is examined it will be observed that it is very similar to the procedure followed in an action, or a special proceeding, under CPLB article 4. Section 720 provides that if the court determines from the pleadings or ‘ ‘ for any of the reasons ’ ’ alleged in the petition that the assessment is illegal or erroneous it shall make an appropriate order; but that if “ testimony is necessary ” to make a determination it shall direct a trial.
Indeed the commission concedes in this court a similarity to CPLB 409 which is part of article 4 and which provides that upon being furnished “ all papers served ” the court 11 shall make a summary determination upon the pleadings, papers and admissions to the extent that no triable issues of fact are raised”.
The Civil Practice Law and Buies expressly are made to apply to all “ civil judicial proceedings ” except where procedure is regulated ‘ ‘ by inconsistent statute ’ ’ (CPLB 101). Procedure in special proceedings is required to be the same as in actions except where otherwise prescribed (CPLB 103, subd. [b]; see, also, People ex rel. American Sugar Refining Co. v. Sexton, 274 N. Y. 304, 307).
Thus, under the Beal Property Tax Law itself, read together with the not inconsistent provisions of Civil Practice Law and Buies, when a petitioner demonstrates that no triable issues of fact exist he would be entitled to move for appropriate judgment. It would be a procedural anachronism if undisputed facts which could lead to a proper judgment nevertheless had to be sent for trial under an article 7 tax proceeding.
The order should be reversed and the motion for summary judgment denied, with costs to appellant.
Chief Judge Full and Judges Breitel, Jasen and Gibson concur with Judge Bergan ; Judges Burke and Scileppi dissent and vote to affirm on the opinion at the Appellate Division.
Order reversed, with costs, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.