*45 OPINION OF THE COURT
Herbert Shapiro, J.
Following the apparent settlement of an action to foreclose a first mortgage (Action No. 1) and the foreclosure sale of same premises resulting from an action to foreclose a second mortgage (Action No. 2), the court-appointed receiver of the rents and profits of the subject premises (520 West 44th Street, New York, N. Y.) moves for the judicial settlement of his respective final accounts. The receiver additionally moves for the following related relief: (1) fixation and allowance of statutory commissions due to the receiver, (2) fixation and allowance of fees for the receiver’s attorney, (3) discharge of the receiver and surety on his bond and (4) further direction as to the payment of surplus moneys in the hands of the receiver less the above-mentioned receiver’s commissions and attorney’s fees.
Movant, Arthur B. Levine, was originally appointed receiver of the rents and profits of the subject premises by order of this court on January 3, 1977, for the benefit of Louis L. Kissling and Naomi K. Buryan (plaintiffs herein in Action No. 1 and first mortgagees of said premises) in an action to foreclose the first mortgage. The foreclosure action itself and the claim of the first mortgagees were thereafter apparently settled.
Subsequent thereto, an action to foreclose the second mortgage (executed on October 10, 1967 and assigned to Benjamin Mallamud on March 3, 1978) was commenced by said Mallamud, a second mortgagee of said premises and plaintiff herein in Action No. 2. On July 13, 1978, the receiver’s appointment was extended by order of this court for the benefit of Mallamud. The bond of the receiver was similarly extended. The second mortgagee later purchased the subject premises in a foreclosure sale on March 28, 1979, obtaining a deficiency judgment in the amount of $38,806.94 against Irving Maid-man, the past mortgagor and prior owner of the subject premises, and one of the defendants herein in both foreclosure actions. The second mortgagee now claims that he is thus entitled to any surplus moneys in the hands of the receiver.
However, two judgment creditors (defendants W. E. Hutton and Co., hereinafter "Hutton,” and Bernard A. West) each additionally claim to be entitled to such surplus moneys in that they are judgment creditors of Irving Maidman.
West claims that prior to the orders initially appointing the *46 receiver herein, he entered a judgment against defendant Maidman, then mortgagor of the subject premises, on January 16, 1975 in this court; that on April 4, 1978 he served a restraining notice under CPLR 5222 prohibiting the receiver from selling, assigning or transferring any property held by said receiver regarding defendant Maidman; and that during August, 1979, execution and levy upon the receiver was made.
Hutton contends that on March 11, 1975 (subsequent to West’s judgment) it obtained a judgment against defendant Maidman in the Supreme Court, Rockland County; that said judgment was docketed in the office of the clerk of New York County on March 20, 1975; and that it later issued (date unrecited) an execution to the Sheriff of New York County directing said Sheriff to satisfy Hutton’s judgment out of Maidman’s real and personal property. Hutton further served the receiver with a restraining notice. No mention is made as to whether actual levy upon the receiver took place and, if so, when it occurred.
The claims of priority to surplus moneys in the hands of the receiver made by West and Hutton, judgment creditors, must be denied. CPLR 5234 (subd [c]), relating to the priority of judgment creditors and the distribution of proceeds, provides, in part: "Where personal property or debt has been ordered delivered, transferred or paid, or a receiver thereof has been appointed by order, or a receivership has been extended thereto by order, and the order is filed before the property or debt is levied upon, the rights of the judgment creditor who secured the order are superior to those of the judgment creditor entitled to the proceeds of the levy” (emphasis added). In the instant case, neither West nor Hutton issued an execution and obtained a levy upon the debtor Maidman or the receiver herein prior to the date of the order (July 13, 1978) extending the benefit of the receivership to Benjamin Mallamud (a subsequent judgment creditor). Thus, Mallamud’s right to surplus moneys in the hands of the receiver is superior to that of West’s or Hutton’s.
Nor can judgment creditors, such as West and Hutton, secure any priority by the mere service of a restraining notice upon a receiver (6 Weinstein-Korn-Miller, NY Civ Prac, par 5234.17). Pursuant to CPLR 5234 (subd [c]), where there are both execution and nonexecution creditors pursuing the same judgment debtor, priority is awarded to the judgment creditor who either files his order for payment, transfer, delivery or *47 the appointment of a receiver before the debt or property covered by the order is levied upon.
As stated in City of New York v Panzirer (23 AD2d 158, 162), "for a judgment to attain status in the ranking of priorities [under CPLR 5234, subd (c)] there must either be a levy, an order directing delivery of property, or the appointment of a receiver. Any other measures taken by the judgment creditor, no matter how diligent, on an absolute or comparative basis, do not suffice to qualify for priority.”
The court in Panzirer, by Justice Bbeitel, emphasized that the underlying purpose of CPLR 5234 (subd [c]) was to make the ranking of priority statutory, thus eliminating both decisional variations and difficult factual tests based upon the measure of diligence exerted by members of different classes of judgment creditors (see, also, Fehr v First Americana Corp., 31 AD2d 967).
With respect to the accounts themselves, the first account covers the period from January 3, 1977, to approximately April, 1978 (Action No. 1) and the second account (Action No. 2) covers the period July 13, 1978, to approximately April, 1979.
Schedule C of the receiver’s first account indicates that total receipts were $16,759.24; total disbursements were $11,115.69, leaving a balance of $5,643.55. Pursuant to CPLR 8004 (subd [a]), commissions due to the receiver for the period covered by the first accounting are properly calculated and fixed at $837.96 (that is, 5% of the total receipts).
Schedule C of the receiver’s subsequent second account reveals that total receipts were $11,997.51; total disbursements were $13,866.94, resulting in a deficit balance of $1,869.43 which, when added to the surplus of $5,463.55 retained by the receiver from the first account, leave a balance of $3,774.12 in surplus moneys in the hands of the receiver. Subsequent to the filing of the account, the receiver has indicated that such balance should be reduced by the sum of $900, representing lease security moneys erroneously listed under "receipts”. In the absence of objection by the other interested parties, the schedules will be deemed amended accordingly, leaving a balance of $2,874.12. Commissions due to the receiver for the period covered by the second account are properly calculated and fixed at $554.88 (that is, 5% of the adjusted total receipts).
The fee for legal services rendered by the receiver’s attor *48 ney (who was retained pursuant to an order of this court, dated October 3, 1977) plus reimbursement for any necessary disbursements will be fixed in the order to be settled hereon.
The accounts presented are judicially settled and approved in accordance with the foregoing. Upon payment of the above-mentioned commissions and legal fees (plus any necessary disbursements) for the receiver’s attorney, the balance of any surplus moneys in the hands of the receiver shall be paid to Benjamin Mallamud, plaintiff herein, in Action No. 2.
Upon the filing by the receiver of an affidavit or affirmation showing his full compliance with the terms and provisions of the order to be entered hereon, and upon his making an ex parte application therefor, he shall be finally discharged and the bond heretofore given by him for the faithful performance of his duties shall be canceled and vacated, and the surety thereon released.