[600 NYS2d 460]

FORTUNE FINANS AB, Appellant, v LENNART ANDERSSON et al., Defendants. CAPSTAN INVEST AB et al., Nonparty Respondents.

First Department, July 22, 1993

### APPEARANCES OF COUNSEL

*Thomas J. Hall* of counsel *(Maria E. Cannon* and *Robert G. Najarian* with him on the brief; *Chadbourne & Parke,* attorneys), for appellant.

*Charlene O'Dell* of counsel *(Neal Spicehandler* with her on the brief; *Graham & James,* attorneys), for nonparty respondents.

### OPINION OF THE COURT

ELLERIN, J.

On this appeal we are called upon to determine the priority rights of creditors in a painting by Peter Paul Rubens. Plaintiff relies upon a New York order of attachment while movants-respondents assert rights by way of a security interest alleged to have been perfected in Switzerland before the painting was transferred to New York.

The underlying facts are as follows. Between October 1989 and February 1990, plaintiff Fortune Finans AB (Fortune) a Swedish finance company, allegedly loaned defendant Lennart Andersson, an art dealer, approximately $4.7 million to purchase artwork consisting of various paintings. Shortly thereafter, Andersson obtained a loan of approximately $1,000,000

from Kaj Sigstam, the predecessor in interest of movant-respondent Capstan Invest AB (Capstan) and from movant-respondent Carl Horn (Horn) in order to purchase, for resale, another painting entitled "Die Landschaft Mit Dem Regenbogen" by Peter Paul Rubens (the Rubens). At that time, Andersson executed promissory notes in favor of both movants-respondents (hereinafter movants) and an agreement, dated March 16, 1990, by which he granted Sigstam and Horn a security interest in the Rubens.

March 16, 1990 was also the date on which Andersson purchased the Rubens, which was then located in Switzerland. Shortly thereafter, the Rubens was picked up, upon Andersson's instructions, by one Julanda Rohleder. There is evidence in the record indicating that Andersson informed Rohleder of the security interest held by Horn and Sigstam and instructed her that she was to take possession of the Rubens on their behalf as well as his own, and that Sigstam similarly advised Rohleder of those security interests. Rohleder in turn transferred the Rubens to a Swiss transport company known as Welti-Furrer, who in turn transferred it to SwissAir, who delivered it to J&J Trucking in New York, who, finally, delivered it into the hands of defendant Judson Art Warehouse (Judson), in Long Island City, where it remains. It is not questioned that Judson took the Rubens without notice of the security interests of Horn and Sigstam.

After Andersson defaulted on his loans to plaintiff Fortune, Fortune instituted the instant action against Andersson, Judson and others to, *inter alia,* enjoin Judson from releasing the various paintings owned by Andersson in which plaintiff had been granted a security interest. The Rubens was not one of the paintings in which plaintiff claimed such an interest. However, in order to secure sufficient assets to satisfy a potential judgment on its $4.7 million loan, Fortune applied for an order of attachment over Andersson's other assets in New York, including the Rubens. Orders of attachment were issued by the Supreme Court on May 8 and May 14, 1990, and on the latter date the Sheriff of Queens County levied upon assets owned by Andersson, including the Rubens painting in issue on this appeal. On May 31, 1990, Andersson notified Judson of the security interest in the Rubens held by movants Horn and Capstan, to whom Sigstam had endorsed his promissory note and security agreement. On July 5, 1990, movants applied pursuant to CPLR 6223 (a) to modify the orders of attachment to exclude the Rubens from their scope, alleging

that they had properly perfected a security interest in the painting under Swiss law and that, since they had not been aware of the Rubens removal to New York, under UCC 9-103 that security interest remained in effect for four months following the arrival of the painting in New York in March. On July 11, 1990, movants filed appropriate financing statements thereby perfecting a security interest in the Rubens under New York law.

While the IAS Court, at the outset, concluded that a security interest in the painting had been perfected by movants in Switzerland by virtue of the delivery of the Rubens to Rohleder with notice of their interest, it held final disposition of the application in abeyance pending a hearing on the issue which it viewed as the crux of the dispute, that is, whether the movants understood at the time the security interest attached in Switzerland that the painting was to be kept in New York, since if they had such knowledge they would have had only 30 days, under UCC 9-103 (1) (c), in which to take the necessary steps in New York to continue the perfection of such interest, while without such knowledge paragraph (d) of UCC 9-103 (1) would apply. After the hearing, the IAS Court found that movants were unaware that the Rubens was going to be moved to New York and that their security interest remained perfected for four months following the arrival of the Rubens in New York pursuant to UCC 9-103 (1) (d) (i). In light of those findings the court held that movants' interest had priority over plaintiff's, that the Rubens should therefore be excluded from the orders of attachment previously obtained by plaintiff and that movants should be permitted to remove the Rubens from the Judson warehouse, providing that any excess proceeds from its sale be deposited with the court. That order was stayed pending this appeal.

Accepting the IAS Court's findings that movants had a perfected security interest in the painting under Swiss law and that they did not know that it was to be moved to New York (although the latter conclusion appears somewhat puzzling in light of Sigstam's own direct conversation with Rohleder who was charged with effectuating such move), the statutory provision which controls is UCC 9-103 (1) (d) (i). That section provides, in pertinent part:

"When collateral is brought into and kept in this state while subject to a security interest perfected under the law of the jurisdiction from which the collateral was removed, the

security interest remains perfected, but if action is required by Part 3 of this Article to perfect the security interest,

"(i) if the action is not taken before the expiration of the period of perfection in the other jurisdiction or the end of four months after the collateral is brought into this state, whichever period first expires, the security interest becomes unperfected at the end of that period and is thereafter deemed to have been unperfected as against a person who became a purchaser after removal".

The IAS Court interpreted the statute as automatically providing movants with a four-month grace period, measured from the time that the painting was placed with Judson, within which to perfect their security interest in New York. It did not, however, address the issue of "the expiration of the period of perfection in the other jurisdiction", which we find is the dispositive issue in this case.

As the language of the statute itself makes clear, in order to determine the time within which a creditor is required to reperfect a security interest in collateral in this State, it is necessary to determine the remaining duration of perfection in the original jurisdiction. If the remaining period of perfection in that jurisdiction, here Switzerland, is less than four months from the time the collateral was brought into this State, the creditor must act within such remaining lesser period. (See, 8 Anderson, Uniform Commercial Code § 9-103:38 [3d ed 1985].)

The critical question then is what was the remaining duration of the period of perfection in Switzerland because if perfection of the security interest terminated under Swiss law, for any reason, prior to the expiration of the four-month grace period provided by UCC 9-103 (1) (d) (i) such grace period expired with it, since the statute expressly speaks to "whichever period first expires".

While movants for the first time on this appeal assert that the Swiss security interest continued indefinitely, that assertion is inconsistent with the opinion of their own expert which was submitted in support of their application before the IAS Court. In that regard, movants' Swiss law expert opined that:

"[T]he security interest in the Rubens remain[ed] perfected under Swiss law at least until the Rubens arrived in New York.

"[T]he debtor duly created a security interest in the Rubens which continued under Swiss law. The pledge (security inter-

est) was created and maintained, as long as the Rubens was in Switzerland.

"[T]he Swiss PILS provides for a basic *lex loci rei sitae* decision on application of substantive law. Once the painting was within the jurisdiction of New York, New York's substantive law on continuity of a security interest would govern".

Plaintiff's expert pointed to article 888 of the Swiss Civil Code which provides that a security interest is extinguished when the pledgee (the secured party) ceases to have possession of the chattel and cannot demand it back from third parties in possession, and opined that a security interest would be extinguished if the collateral was in the possession of a third party without notice.

There is no dispute here that Judson was unaware of movants' security interest during the period in question, and there was no showing by movants, who bore the burden of demonstrating their superior right in order to warrant the vacating of the attachment, that they could have demanded the return of the painting from Judson. Thus, under the uncontested provisions of Swiss law (Civ Code art 888), it must be found that perfection of the movants' security interest expired upon transfer of the Rubens to Judson in New York without notice of their interest. Since, as indicated, under UCC 9-103 (1) (d) (i), the grace period expires upon the sooner of either four months or the expiration of perfection under the law of the other jurisdiction, once movants failed to demonstrate that their perfected Swiss security interest was still viable after the picture was in Judson's possession, they could not avail themselves of the protection of the grace period. Absent such grace period, there was no basis upon which to permit movants to attack plaintiff's attachment rights which were asserted some two months prior to movants' perfecting their security interest in the painting under New York law by filing appropriate financing statements.

Movants' additional argument that they were entitled to the four-month grace period based on article 100 (1) of Switzerland's Private International Law Statute, which provides, "Acquisition and loss of real rights in movable goods are governed by the law of the country of location at the time of the event giving rise to the acquisition or loss", is also unavailing. New York law, i.e., UCC 9-103 (1) (d) (i), in turn provides that, in determining the grace period, reference should be made to the law of the jurisdiction from which the

collateral was removed, i.e., Switzerland. Furthermore, even if substantive New York law were applied to determine the rights of the parties upon the arrival of the Rubens in New York, movants would not, as they argue, be entitled to a four-month automatic perfected security interest by virtue of UCC 9-103 (1) (d) (i). This section does not provide for the *creation* of a perfected security interest, but only for the *extension* of one. Thus, as movants had not, at that point, filed a financing statement, and since the Rubens was in the possession of a bailee who did not have notice of their interest *(see,* UCC 9-305), and since they were not otherwise exempted from filing *(see,* UCC 9-302), movants' interest was no more perfected under New York law than it was under Swiss law.

We have examined movants' remaining arguments, and find that they are without merit.

Order, Supreme Court, New York County (Elliott Wilk, J.), entered September 24, 1992, which granted the motion of nonparty movants Capstan Invest AB and Carl Horn to modify certain orders of attachment and levies thereunder to exclude from their scope a painting by Peter Paul Rubens entitled "Die Landschaft Mit Dem Regenbogen", unanimously reversed, on the law, and the motion denied, without costs.

MILONAS, J. P., ASCH, KASSAL and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered September 24, 1992, which granted the motion of nonparty movants Capstan Invest AB and Carl Horn to modify certain orders of attachment and levies thereunder to exclude from their scope a painting by Peter Paul Rubens entitled "Die Landschaft Mit Dem Regenbogen", unanimously reversed, on the law, without costs, and the motion denied.