**In re Eftim PANDEFF, Debtor.**

**Bankruptcy No. 96 B 42733 (TLB).**

United States Bankruptcy Court,
S.D. New York.

Oct. 16, 1996.

Cadwalader, Wickersham & Taft by H. Peter Haveless, Jr., New York City, for Banque Indosuez.

Satterlee Stephens Burke & Burke, L.L.P. by James J. Coster, New York City, for Debtor.

## DECISION ON BANK'S CLAIMED SECURED STATUS

TINA L. BROZMAN, Chief Judge.

Banque Indosuez ("the Bank") moves pursuant to section 362(d)(2) of the Bankruptcy Code for relief from the automatic stay to permit it to sell the interest of Eftim Pandeff, the debtor, in a cooperative apartment. It is undisputed that the amount of the Bank's amended state court judgment exceeds the value of the property. And although this particular property may not be necessary for the debtor to conduct his business, if, as the debtor contends, the Bank is not secured, the debtor's unsecured creditors will stand to benefit greatly. That issue, the validity of the security interest, is the sole one presented.[1] Admittedly the debtor has not commenced the adversary proceeding which is ordinarily a prerequisite to the type

---

1. By this same motion, the Bank moved to modi- fy the stay to allow a pending action between the

of determination which he seeks. *See* Fed. R.Bankr.P. 7001. The procedural defect has been waived, however, by the Bank, with both parties consenting to my determining the validity of the Bank's lien within the context of this motion. *See In re Keene Corp.*, 188 B.R. 881, 887 n. 2 (Bankr.S.D.N.Y. 1995); *In re Braniff Int'l Airlines, Inc.*, 164 B.R. 820, 831 (Bankr.E.D.N.Y.1994), *aff'd without opinion*, (E.D.N.Y.), *aff'd*, No. 95–5074, 1996 WL 313889 (2d Cir. June 12, 1996). To that end, because the facts are not disputed, I am treating this contested matter as a motion for summary judgment.

## I.

Eftim Pandeff owns a cooperative apartment at 11 East 86th Street, Unit 17C, New York, New York out of which he operates his consulting business. Also residing there is Pandeff's 35–year–old son, who pays the monthly maintenance. Some of Pandeff's business records are maintained in the apartment but others are in Switzerland. The Bank, which is French, is authorized to do business both in Switzerland and New York.

The dispute regarding the nature of the Bank's claim arises out of two guarantees which Pandeff made of three loans that the Bank extended to three companies. The first, a written guarantee dated December 17, 1987 (the "1987 Guaranty"), assured repayment of two loans to Axa Capital Corp. ("Axa") and Sophia Technologies, S.A., formerly Axa Technologies, S.A. ("Technologies"). *See* "The 1987 Guaranty" in the Aff. in Opp'n at Ex "B." As security for the guarantee, Pandeff pledged the cooperative shares to the Bank. Russell Aff.Ex. "3," Supp.Aff.Ex. "3," Pandeff Aff. ¶ 6. He delivered the shares, but not the appurtenant proprietary lease, to Adrian Driancourt, a vice president of the Bank, on January 27, 1988. Among other provisions, the 1987 Guaranty provided that:

1. This guarantee is hereby given to the Bank separately from any other guarantee or undertaking for the purposes of covering any of the Bank's claims against any one of the debtors.

. . . . .

3. Should the Bank hold collateral which is not expressly pledged as security for the claims hereby guaranteed, it may use such collateral to obtain repayment of other claims.

The 1987 Guaranty provided that it was to be governed exclusively by Swiss law; that law rendered the guarantee unenforceable because Pandeff had not obtained his wife's consent to its execution. *See* Driancourt Aff. ¶ Four at 11, at Ex. "B" of Coster Aff. in Opp'n; Swiss Federal Code of Obligations § 494(1), *translated in*, Simon L. Goren, The Swiss Federal Code of Obligations (Fred B. Rothman & Co. 1987 & Supp.1988).

In July 1988, the Bank extended a loan to Flexible Computer Corp. ("Flexible") and, about a year later, agreed to forego immediate collection of all three loans if Pandeff executed another (this time enforceable) personal guarantee. By then, Pandeff was registered with the Swiss Commercial Registry, obviating the need for spousal consent. Driancourt Aff. ¶ 13 at 5; Swiss Federal Code of Obligations § 494(2). The parties executed the guarantee before a notary public on August 23, 1989 ("the 1989 Guaranty"), Pandeff now obligating himself to repay all three loans if called upon to do so. Like its predecessor, the 1989 Guaranty provided that it was to be governed exclusively by Swiss law. In addition it provided that:

1. This Guaranty is granted to the Bank irrespective of any other guaranty or undertaking granted by anyone to secure any of the Bank's claims against one or the other debtors.

. . . . .

3. If there are other securities in favour of the Bank which have not been especially

parties to proceed in the Northern District of Texas and also to dismiss the petition on the grounds of Pandeff's bad faith. The parties re-solved the former dispute by stipulation and I denied the latter at the July 9, 1996, hearing.

created for the above-mentioned debts, the Bank may use them to guarantee the refunding of other debts.

*See* "The 1989 Guaranty" in the Repl.Aff., Ex. "A."[2] The Bank did not file notice of its alleged security interest in the shares in New York or anywhere else. It did, however, continue to hold the shares, over which it had never relinquished possession.

In 1991, the Supreme Court, New York County, granted summary judgment upholding the validity of the 1989 Guaranty—despite Pandeff's various defenses and counterclaims. *See* Ex. "1," *Banque Indosuez v. Pandeff*, No. 18478/90, slip op. at 8 (Mar. 20, 1991) (Cohen, J.). After a partially successful appeal by Pandeff,[3] the Bank entered its amended judgment in the office of the Clerk of New York County on March 24, 1995, although it did not serve a writ of execution. Not. of Motion, Ex. "E." The amended judgment was docketed that same day. *Id.* In December 1995, the Bank commenced a special proceeding pursuant to New York's Civil Practice Law & Rules ("CPLR") § 5206(e) to enforce its judgment against Pandeff's cooperative apartment. The Bank's petition demanded that the cooperative apartment be sold and that $10,000 of the proceeds be distributed to Pandeff; that the Bank's judgment be adjudged a lien against the excess proceeds of the sale; and that such lien be enforced against the excess proceeds. *See* Supp.Aff., Ex "2" at 1–2. Pandeff cross-moved for a stay on the ground that he had commenced an action against the Bank in Texas which might render a sale of his cooperative apartment unnecessary. The state court decision on the motion and cross-motion described the petition as one "to compel sale (CPLR 5206)." The order provided so far as germane:

The petitioner is a judgment creditor seeking to compel the sale of the home, a cooperative apartment, of the respondent judgment-debtor Eftim Pandeff ("respondent"). The judgment is in excess of one million dollars. The apartment is worth less than the amount owed under the judgment. Petitioner seeks to retain the proceeds of the sale in excess of $10,000 and to pay $10,000 to respondent. Petitioner also seeks to compel the cooperative corporation to transfer the proprietary lease and shares allocated to the apartment upon the sale.

\* \* \*

CPLR 5240 provides that a court may "make any order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." A stay of enforcement must be supported by a showing that the respondent would suffer "unreasonable annoyance, expense, embarrassment, or other prejudice if the stay were not granted." (*Commercial Credit Development Corp. v. Bailey*, 80 A.D.2d 748, 437 N.Y.S.2d 183)

Respondent has not made any showing that his annoyance, expense, embarrassment, or prejudice would be unreasonable if the sale were conducted. In fact, it is the petitioner who would be prejudiced if the stay were granted. Respondent has no means other than the sale to pay the judgment obtained. The judgment is accruing interest which will never be able to be paid, whereas petitioner could earn interest on the proceeds from the sale. As respondent has no income, an order allowing him to stay in the apartment while paying toward the judgment is not practical.... Respondent is a grown man who

---

2. The original versions of these guarantees were executed in French with identical phraseology in provisions 1 and 3. The wording appears different in the two documents only by virtue of different translations.

3. On appeal, the Appellate Division, First Department, reversed the grant of summary judgment on the Flexible loan guarantee, but not on the other two; apparently, there was an issue of fact

as to whether the Flexible loan had been repaid. The New York Supreme Court then amended its judgment and reduced the award to reflect the appellate court's ruling. *See* Ex. "E," *Banque Indosuez v. Pandeff*, No. 18748/90, *amended slip op.* (Mar. 24, 1995). The New York Court of Appeals denied Pandeff's motion for leave to appeal in September 1995.

could move if necessary. The court will however give respondent a brief period in which to move.

Accordingly, the petition is granted with execution stayed for 60 days from the date of service upon respondent of a copy of this order with notice of entry. The cross-motion is denied. Settle final judgment providing for sale by the sheriff. The terms of the sale must conform to the express terms of the proprietary lease.

"Ex. F," *Banque Indosuez v. Pandeff & 11 East 86th Street Corp.*, No. 131041/95, Order (Mar. 19, 1996). At the end of this decision, Justice Cohen checked the box indicating that it was a "non-final disposition." The Bank entered this order in Office of the Clerk of New York County on March 19, 1996, and served notice of its entry upon Pandeff's attorneys on March 21, 1996.[4]

## II.

Section 362(d)(2) provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—(2) with respect to a stay of an act against property under subsection (a) of this section if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2). "Equity in this context refers to the difference between the property value and the total amount of liens against it." *In re New Era Company*, 125 B.R. 725, 728 (S.D.N.Y.1991) (quotation omitted). If the Bank has no lien then relief from the stay is unwarranted because the Bank is entitled to no more than is any other general, unsecured creditor. The debtor contends that the Bank has the burden of proof under section 362(g)(1) because the

issue is equity. But that is not quite right, for the determination of equity turns not on the total of the validated liens, but on the colorable liens asserted (with the court being permitted to consider, but not adjudicate, the validity of liens). This is so because, as mentioned earlier, a lift stay motion is an inappropriate vehicle for declaring the extent of an interest in property. An adversary proceeding is required. *See Grella v. Salem Five Cent Savings Bank*, 42 F.3d 26, 32 (1st Cir.1994) (summary lift stay motions do not involve a full adjudication on the merits of claims, defenses, or counterclaims, but simply a determination as to whether a creditor has a colorable claim to property of the estate); *In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1224 (7th Cir.1990). Although I am agreeing to adjudicate this issue within the context of the lift stay motion, this does not mean that section 362 has any applicability to determine burden of proof. Had the debtor instituted an adversary proceeding, the burden would have been on the creditor claiming an interest in the debtor's property to prove the validity of its lien. *See H.J. Butler & Bro., Inc. v. Irving Trust Co. (In re Friedal Corp.)*, 53 F.2d 758 (2d Cir.1931) (citing *Brandt v. City of New York*, 110 A.D. 396, 97 N.Y.S. 280, *aff'd*, 186 N.Y. 599, 79 N.E. 1101 (1906)). The same rule obtains here.

It is well settled that whereas the contours of the debtor's estate are determined under federal law, property interests are defined by state law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Accordingly, New York law applies to determine whether the Bank has a valid lien on the cooperative shares.

## A. CONSENSUAL LIEN

Any discussion of the appropriate treatment of stock in cooperatives necessarily begins with the words of the New York Court of Appeals:

The interest in a cooperative apartment is *sui generis* in modern property law, be-

---

4. The Bank also settled the order directing the sale, but before it was signed and the sixty-day

stay had expired, the debtor filed this chapter 11 petition.

cause it does not fit neatly into traditional property classifications; the interest is represented by shares of stock, which are personal property, yet in reality what is owned is not an interest in an ongoing business enterprise, but instead a right to possess real property. Characterization of an interest in a cooperative apartment, therefore, is not resolved by uncritical resort either to the rubrics governing real property or those governing personal property. Instead, this court, and other courts, have assessed on a case-by-case basis which aspect of this paradoxical interest predominated, in order to determine the applicability of a particular rule of law or statutory scheme.

*In re Carmer,* 71 N.Y.2d 781, 784–85, 525 N.E.2d 734, 735, 530 N.Y.S.2d 88, 89 (1988) (internal quotes and citations omitted).

■ Insofar as perfection of a security interest in their shares is concerned, cooperatives are characterized as personalty under New York law; the security interest is thus governed by Article 9 of the Uniform Commercial Code. *Fundex Capital Corp. v.*

*Reichard,* 568 N.Y.S.2d 794, 795, 172 A.D.2d 420 (1st Dep't), *appeal dismissed,* 78 N.Y.2d 1007, 580 N.E.2d 1060, 575 N.Y.S.2d 457 (1991), *r'arg dismissed,* 79 N.Y.2d 886, 589 N.E.2d 1261, 581 N.Y.S.2d 279 (1992); N.Y.U.C.C. § 9–104(j).[5]

Pandeff makes much of the fact that the Bank is holding only the shares, but not the appurtenant proprietary lease, to the apartment. However, he has not cited a single case where a court has held that possession of the shares of a cooperative corporation alone would be insufficient to perfect a security interest in a cooperative apartment for security interests created before October 1, 1988.[6] Today, the secured party undoubtedly must perfect its interest in a residential cooperative unit by filing a financing statement. N.Y.U.C.C. § 9–304(7). Under prior law possession without more was a valid and enforceable means of perfection. *See* N.Y.U.C.C. §§ 9–304 and 9–305; *Resner v. Greeley,* 212 A.D.2d 619, 619, 622 N.Y.S.2d 330, 331 (2d Dep't 1995); *Superior Financial Corp. v. Haskell,* 556 F.Supp. 199, 200 (S.D.N.Y.1983); *Brief v. 120 Owners, Corp.,*

---

**5.** The parties agree that New York law, specifically, the Uniform Commercial Code, governs the perfection of the Bank's claimed security interest notwithstanding that the parties designated Swiss law to govern the validity of the guarantees. *See* N.Y.U.C.C. § 9–103; N.Y.U.C.C. § 1–105; *Bank of New York v. Amoco Oil Co.,* 35 F.3d 643, 650 (2d Cir.1994); N.Y.U.C.C. § 1–105(b); New York annotations ¶ 2, official comment ¶ 5, 6; § 9–103 & official comment ¶ 1; *Trinity Holdings, Inc. v. Firestone Bank,* 1994 WL 449258 at *5, 73 A.F.T.R.2d 94–2144, 24 U.C.C.Rep.Serv.2d 1263 (W.D.Pa.1994) (citing J. WHITE & R. SUMMERS, UNIFORM COMMERCIAL CODE 895 (2d ed. 1980)), *aff'd,* 66 F.3d 313 (3d Cir. Aug. 7, 1995).

**6.** There is at least some authority which suggests a relevant inquiry is whether such a restriction is *noted on the shares. See, e.g., Joel E. Miller, Condominiums and Cooperatives,* 17 J.REAL EST. TAX'N 264 (vol. 18, Spring 1990); *cf. ALH Properties Ten v. 306–100th Street Owners Corp.,* 86 N.Y.2d 643, 648–49, 658 N.E.2d 1034, 1036–37, 635 N.Y.S.2d 161, 163–64 (1995). Nonetheless, all of the published decisions cited by the debtor and the Bank merely note in *dicta* either that perfection of an interest in a cooperative corporation apartment may be obtained by possession of the shares *and* the appurtenant proprietary lease, *see, e.g., In re Brief v. 120 Owners Corp.,* 157 A.D.2d 515, 515, 549 N.Y.S.2d 706, 707 (1st

Dep't 1990), or note that a security interest in cooperative corporation shares and concomitant proprietary leases could be effected by "taking possession of the subject shares," *Resner v. Greeley,* 212 A.D.2d 619, 619, 622 N.Y.S.2d 330, 331 (2d Dep't 1995). None of the courts, however, was faced with the issue of whether possession of the shares alone would be insufficient to perfect the security interest under prior law, nor was such a finding necessary to any judgment. *Cf. First Sav. Bank v. Barclays Bank, S.A.,* 618 A.2d 134 (D.C.Ct.App.1992) (under D.C. law, possession of the proprietary lease alone was insufficient to perfect).

The Bank cites *United States v. Broady,* 89–1 U.S.T.C. ¶ 9175, 1989 WL 11419 (S.D.N.Y.), *modified sub nom. United States v. 110–118 Riverside Tenants Corp.,* 886 F.2d 514 (2d Cir.1989), for the proposition that possession of the shares alone would be sufficient. In *110–118 Riverside Tenants Corp.,* the court gave priority to the involuntary tax lien of the government over the cooperative corporation's claim for unpaid maintenance charges (which accrued after the lien attached) notwithstanding that the government only filed notices of its lien as to the shares, without mentioning the associated proprietary leasehold. *Id.*

157 A.D.2d 515, 516, 549 N.Y.S.2d 706, 707 (1st Dep't 1990). The initial question then is whether the new subsection (7) of section 9–304 applies to the Bank's security interest, for if it does, the Bank, not having filed a financing statement, has no perfected consensual lien. *See* N.Y.U.C.C. §§ 9–304(7), 9–401(b), 9–301(1)(b); 11 U.S.C. §§ 544, 1107(a).

▮▮▮ Under Swiss law, the Bank's 1987 Guaranty is unenforceable. Thus, the only security agreement upon which the Bank may base its perfected security interest is the 1989 Guaranty. In this vein, Pandeff urges that the shares were not intended to collateralize the 1989 Guaranty. This argument, however, is barred by the parol evidence rule: the guarantee agreements are fully integrated; they do not make reference to other documents which might contain a restricted list of collateral; and paragraphs 1 and 3 of both the 1987 and the 1989 guarantees (quoted above) unambiguously contradict Pandeff's assertion. *See, e.g., U.S. Fire Ins. Co. v. General Reinsurance Corp.,* 949 F.2d 569, 571 (2d Cir.1991). As to the claimed enforceability of a security interest even in the absence of an enforceable security agreement, the Bank, upon whom the burden is cast, has not cited a single authority to support its optimistic view. A lien only exists in connection with and to secure performance of an *obligation.* REPORT OF THE LIENS SUBCOMMITTEE, LIENS ON INDIVIDUAL COOPERATIVE APARTMENTS (New York State Bar Association, Jan. 24, 1995). The Bank argues that "the shares were pledged and delivered to secure an obligation that arose in 1987 and that obligation continued uninterrupted thereafter." Supp.Memo of Law at 6. While the facts about pledge and delivery are certainly true, the argument makes little sense given that the Bank has conceded that the 1987 agreement is unenforceable. General principles of the law of secured transactions tell us that possession in and of itself does not create a security interest in the property possessed; possession must be accompanied by an agreement with the debtor. *See, e.g.,* N.Y.U.C.C. § 9–203(1)(a); *Carol*

*Ruth Inc. v. Wingspread Corp. (In re Wingspread Corp.),* 107 B.R. 456, 460 (Bankr.S.D.N.Y.1989); *Saada v. Master Apts., Inc.,* 152 Misc.2d 861, 579 N.Y.S.2d 536, 538 (Sup.Ct.N.Y.County 1991); *see also Fortune Finans AB v. Andersson,* 192 A.D.2d 124, 600 N.Y.S.2d 460 (1st Dep't 1993) (applying Swiss law to possessory security agreement); *see also Continental Coffee Prods. v. Banque Lavoro S.A.,* 852 F.Supp. 1235, 1240, 1241 (S.D.N.Y.1994); Swiss Code of Federal Obligations § 499(1) (contemplating an agreement); § 495(2) (contemplating pledges). The apparent policy behind the applicable Swiss law would be substantially curtailed if I were to allow the unenforceable guarantee to give rise to an enforceable security interest. Swiss law requires that the spouse of a guarantor consent before a guaranty is enforceable; the Bank's implicit argument that it may circumvent this rule simply by taking possession of property of the guaranteeing spouse without the consent of his wife would substantially defeat the Swiss rule. I conclude that the Bank does not have a security interest in the shares pursuant to the unenforceable 1987 Guaranty.

The Bank's citation to *Billings v. Avco Colorado Industrial Bank (In re Billings),* 63 B.R. 717, 721 (D.Colo.1986), *aff'd* 838 F.2d 405 (10th Cir.1988), gives no pause. The original agreement in *Billings* was *enforceable;* the later one evidenced the same obligation, changing the interest rate and extending the payback period for the purchase money security interest in consumer goods at issue there. *Id. Billings* is so factually distinguishable that it cannot be said to compel the result that the Bank is urging.

▮▮▮ We are left then with the 1989 Guaranty, which was executed well after section 9–304(7) became effective. *See Rosenberg and Marino, Jr., Non–Traditional Title Insurance Coverage for Real Estate Related Transactions,* 344 PRAC.L.INST./REAL 617 (Feb. 1, 1990) (quoting section 6 of the Act). Here, perfection did not take place until the 1989 Guaranty was executed, for that was the date of the last step that occurred upon

which the Bank bases its perfected interest. *See* N.Y.U.C.C. § 9–303(1). Therefore, the Bank could only perfect by filing in the county where the real estate was located. N.Y.U.C.C. § 9–304(7). Because the Bank failed to file, its consensual security interest is unperfected as against the creditors of this chapter 11 estate. *See* N.Y.U.C.C. §§ 9–304(7), 9–401(1)(b), 9–301(1)(b); 11 U.S.C. §§ 544, 1107(a).[7]

We turn to the Bank's alternative theory that it is possessed of a judgment lien.

## B. JUDGMENT LIEN

 Except as provided by statute, a judgment is not a lien against property of the judgment debtor. *Suffolk County Federal Sav. & Loan Ass'n v. Geiger*, 57 Misc.2d 184, 291 N.Y.S.2d 982 (1968). Article 52 of New York's Civil Practice Law and Rules ("CPLR") supplies the procedural law for the enforcement of judgments and the mechanisms for creating judgment liens. For real property, CPLR 5203 prescribes that a judgment becomes a lien when it is docketed in the office of the county clerk where the real estate is located. N.Y.CIV.PRAC.L. & R. § 5203 (McKinney's 1992 & Supp.1996); DAVID D. SIEGEL, PRACTICE COMMENTARIES C5203:1, C5201:11. In contradistinction to

the rules for real property, the rules for personal property are found in sections 5202 and 5234. CPLR section 5202 subdivision (a) governs when the creditor is using an execution as the enforcement device, *see* CPLR 5230, and subdivision (b) governs when the creditor has procured one of the lien-giving orders under Article 52, *see, e.g.*, CPLR 5225, 5234. *Id.* at C5202:1; C5201:11. Section 5234 governs priorities in liens against personal property.

██ The Bank contends that the apartment is personal property and therefore does not argue that the docketing of its judgment back in 1993 accorded it any priority.[8] Therefore, I turn to New York law regarding the creation of judgment liens on personal property.

Section 5202 provides:

**(a) Execution creditor's rights.** Where a judgment creditor has delivered an execution to a sheriff, the judgment creditor's rights in a debt owed to the judgment debtor or in an interest of the judgment debtor in personal property, against which debt or property the judgment may be enforced, are superior to the extent of the amount of the execution to the rights of any transferee of the debt or property except:

---

7. Having determined that post-amendment law applies to this dispute, I need not decide the issue of whether possession of the shares alone (without the appurtenant proprietary lease) would have been sufficient to perfect a security interest in this apartment under prior law.

8. Possibly the Bank skips over this argument because of the decision of the New York Court of Appeals in *State Tax Comm'n v. Shor*, 43 N.Y.2d 151, 154, 371 N.E.2d 523, 524, 400 N.Y.S.2d 805, 806 (1977). There the court held that a proprietary lease is to be considered as personal property when a judgment lien is sought so that mere docketing in the county clerk's office is insufficient to create the desired lien. However, faced with competing banks, one which had obtained the cooperative shares and the proprietary lease pursuant to a guarantee and the other which had previously docketed its judgment without executing on it, the court noted that "one could equally conclude" either way. *Id.* 43 N.Y.2d at 156–57, 400 N.Y.S.2d at 808, 371 N.E.2d at 526. Part of what the court relied upon in holding that the stock should be consid-

ered personalty was the fact that, at that time, no filing was necessary to perfect a security interest in cooperative shares. With the enactment of section 9–304(7) of the Uniform Commercial Code, filing is now required, raising a question whether the Court of Appeals would still uphold its decision in *Shor* were it faced with the issue anew. Nonetheless, no court in New York has opined on whether *Shor* is still controlling. *But see First Savings Bank v. Barclays Bank, S.A.*, 618 A.2d 134, 140 (D.D.C.Ct.App.1992); 3 WARREN'S WEED NEW YORK REAL PROPERTY, LEASES AND LETTINGS, § 1:03 (1996) (concluding that there is no definite answer to the question whether a lien is obtained by following the rules for personalty or realty). In any event, the Bank having failed to raise the issue of whether the docketing of its judgment was sufficient to create a lien, the argument is waived. *In re Oliver*, 186 B.R. 403, 406 n. 1 (Bankr.E.D.Va.1995); *In re Taft*, 171 B.R. 497, 506 n. 17 (Bankr.E.D.N.Y.1994), *aff'd in part, rev'd in part*, 184 B.R. 189 (E.D.N.Y. 1995).

1. a transferee who acquired the debt or property for fair consideration before it was levied upon; or

2. a transferee who acquired a debt or personal property not capable of delivery for fair consideration after it was levied upon without knowledge of the levy.

**(b) Other judgment creditor's rights.** Where a judgment creditor has *secured an order for delivery of, payment of,* or appointment of a receiver of, a debt owed to the judgment debtor or an interest of the judgment debtor in personal property, the judgment creditor's rights in the debt or property are superior to the rights of any transferee of the debt or property, except a transferee who acquired the debt or property for fair consideration and without notice of such order.

N.Y.C.P.L.R. § 5202 (emphasis added). Section 5234(c) provides in relevant part:

**(c) Priority of other judgment creditors.** Where personal property or debt has been ordered delivered, transferred or paid, or a receiver therefor has been appointed by order, or a receivership has been extended thereto by order, and the order is filed before the property or debt is levied upon, the rights of the judgment creditor who secured the order are superior to those of the judgment creditor entitled to the proceeds of the levy. . . .

 Accordingly, in order to create a judgment lien on personalty, the judgment creditor must either "execute" on the judgment or obtain an enforcement order. *Balaber–Strauss v. Marine Midland Bank,* 129 B.R. 369 (Bankr.S.D.N.Y.1991). The Bank contends that it could not levy pursuant to CPLR 5202(a) because the debtor claimed the apartment as his home. *See* Bank's

Repl.Memo of Law at n. 8.[9] In any event, the Bank bases its judgment lien on CPLR 5202(b) as a result of the special proceeding and the order it secured pursuant to CPLR 5206(e). In relevant part, section 5206 provides:

> **§ 5206 Real Property exempt from application to the satisfaction of money judgments.**
>
> . . . . .
>
> **(e) Sale of homestead exceeding ten thousand dollars in value.** A judgment creditor may commence a special proceeding in the court in which the homestead is located against the judgment debtor for the sale, by a sheriff or receiver, of a homestead exceeding ten thousand dollars in value. The court may direct that the notice of petition be served upon any other person. The court, if it directs such a sale, shall so marshal the proceeds of the sale that the right and interest of each person in the proceeds shall correspond as nearly as may be to his right and interest in the property sold. . . .

N.Y.C.P.L.R. 5206(e). The Bank makes much of the fact that the state court "granted" its petition under 5206(e). However, by the terms of the statute, a section 5206 order would not in itself create a lien; the section only directs that the court marshal the proceeds so that the rights of all persons entitled to the proceeds correspond to those persons' rights in the property. Moreover, it is clear that simply because an order is "granted" under Article 52 the judgment creditor is not automatically vested with a lien. *See Aspen Indus. Inc. v. Marine Midland Bank,* 52 N.Y.2d 575, 421 N.E.2d 808, 439 N.Y.S.2d 316 (1981) (restraining order pursuant to CPLR 5222 does not create judgment lien); *accord Tompkins County Trust Co. v. Sullivan (In re Sullivan),* 31 B.R. 125,

---

**9.** *See Sailor's Snug Harbor v. Tax Comm'n,* 26 N.Y.2d 444, 449, 311 N.Y.S.2d 486, 487, 259 N.E.2d 910, 911 (1970) (When personal or real property that is subject to a judicial lien is partially exempt from judgment creditors, "the lien is enforceable to the extent the value of the property to which the lien attaches exceeds the exemption."); N.Y.Civ.Prac.L. & R. §§ 5232(c), 5222(e); David D. Siegel, Supplementary Practice Commentaries C5232:3, C5234:1 (McKinney's Supp.1996); *Deary v. Guardian Loan Co.,* 534 F.Supp. 1178 (S.D.N.Y.1982); *In re Flax,* 179 B.R. 408 (Bankr.E.D.N.Y.1995).

126–27 (Bankr.N.D.N.Y.1983); *Regency Architectural Metals Corp. v. Ment Brothers Iron Works Co. (In re Regency Architectural Metals Corp.)*, 102 B.R. 17, 18–19 (Bankr. D.Conn.1989). I must determine, therefore, whether by virtue of the CPLR 5206(e) order, the debtor secured an order for delivery or payment of the debtor's interest in property. *See* N.Y.Civ.Prac.L. & R. § 5202(b).

Not only must the order direct delivery of the judgment debtor's interest in property, but for the judgment creditor to prevail over competing judgment creditors, that order must be filed with the clerk. *Kissling v. Maidman*, 103 Misc.2d 44, 47, 425 N.Y.S.2d 469, 471 (Sup.Ct.N.Y.County 1980). The Bank argues that the state court order accomplishes what the statute requires, notwithstanding the state court's "non-final disposition" directing the Bank to settle a judgment providing for the sale of the apartment. The Bank contends that I must read the order in concert with the underlying petition which had specifically requested an order directing the sale, granting a lien, and applying the proceeds to the lien. The Bank emphasizes that the order identified the proceeding as one "seeking to compel the sale of the home, a cooperative apartment, of Eftim Pandeff" and held that "the Petition is granted. . . ."

Neither party has cited a similar instance where an order such as the one present here was held to be either sufficient or insufficient to constitute an order securing delivery of or payment of some personal property. However, nowhere in the order is the Bank extended a lien or assured the proceeds of a sale; the order does not direct delivery or payment of any proceeds of a sale, nor does it direct that the apartment, the shares, the lease, or any sale proceeds be applied to the Bank's judgment. *Cf. City of New York v. Panzirer*, 23 A.D.2d 158, 259 N.Y.S.2d 284 (1st Dep't 1965) (quoting the legislative history of predecessor statute—"priority ... is only gained when property is ordered delivered or paid or transferred to a receiver"). The *Panzirer* court reasoned that the values of certainty and ease of determination of priorities are better achieved when the court doesn't put too much stock in the judgment creditor's other diligent measures. *See id.* Based on the foregoing, I conclude that this order, which explicitly directed that another order be settled, failed to accomplish what the Bank is pressing.

### CONCLUSION

The Bank has not demonstrated either that it has a perfected security interest pursuant to the Uniform Commercial Code or that it acquired a judgment lien pursuant to the section 5206 decision and order issued by the state court. Pandeff is accordingly entitled to judgment declaring that his estate owns the apartment free and clear of any claimed lien of the Bank. Although this chapter 11 debtor has won the day over the putative secured creditor, he has only forestalled his day of reckoning with respect to a sale of his apartment, unless he can negotiate a plan whereby the creditors, including the Bank, either vote in favor of reorganization or receive at least as much as they would in a chapter 7 liquidation. Because the Bank has no perfected lien and because there are other unsecured creditors, the request to lift the stay for the purpose of foreclosing the lien necessarily must be denied.

SETTLE ORDER consistent with this decision.