■ STATE OF NEW YORK, Respondent, v INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, Defendant and Third-Party Plaintiff-Appellant. HSBC BANK USA, Third-Party Defendant-Respondent. [762 NYS2d 116] —Peters, J. Appeals (1) from an order of the Supreme Court (Teresi, J.), entered January 25, 2002 in Albany County, which, inter alia, granted plaintiff's motion for summary judgment, and (2) from the judgment entered thereon.

Herkimer Wholesale Company, a licensed cigarette wholesaler and tax agent, purchased tax stamps on credit from plaintiff and, pursuant to Tax Law § 471 (1) and § 1103 (a) (2), secured a bond from National Union Fire Insurance Company of Pittsburgh in the amount of $1.7 million which named plaintiff as an obligee. Subsequently, defendant assumed liability for the bond and increased it to $2.2 million.

Third-party defendant, HSBC Bank USA, formerly known as Marine Midland Bank (hereinafter HSBC), was Herkimer's primary lender, thereby obtaining a first priority blanket security interest in Herkimer's assets (hereinafter the collateral). When Herkimer defaulted on its agreement with HSBC, a replevin action was commenced in Supreme Court. HSBC ceased its disbursement of funds to pay for additional credit purchases of tax stamps which had already been received by Herkimer and Supreme Court granted a temporary restraining order enjoining Herkimer from selling, disposing or encumbering the collateral.

Shortly thereafter, a bankruptcy proceeding was commenced in the United States Bankruptcy Court against Herkimer, thereby staying the Supreme Court action (*see* 11 USC § 362 [a]). HSBC filed a claim in that proceeding and, upon HSBC's motion, the court issued an order restricting Herkimer's use of its collateral. It further ordered Herkimer to deposit cash receipts into an account maintained by HSBC and later permitted Herkimer to pay creditors and operate its business from such account. From November 1997 through February 1998, Herkimer purchased additional tax stamps by cash wire transfer.

In December 1997, plaintiff filed its claim against Herkimer in the Bankruptcy Court proceeding alleging that it was owed $2,265,853 in unpaid taxes, interests and penalties, seeking a priority "for a debt due a sovereign state." Thereafter, defendant filed an unsecured nonpriority claim in the bankruptcy proceeding in the amount of the bond it issued to Herkimer. The Bankruptcy Court later lifted the stay enabling HSBC to take possession of the collateral. In March 1998, plaintiff authorized HSBC to act as a cigarette wholesaler and tax agent so that it could sell Herkimer's stamped and unstamped cigarette inventory; all unaffixed tax stamps were instructed to be returned.* After liquidation of Herkimer's assets, a considerable debt was still owed to HSBC.

Plaintiff's January 1998 demand to defendant for payment on the bond went unheeded. In December 2000, plaintiff commenced this action in Supreme Court to recover on the bond, and defendant commenced a third-party action against HSBC to recover the amount of unpaid credit purchases of tax stamps and prepaid sales tax that HSBC allegedly seized from Herkimer and failed to return to plaintiff. When all parties moved for summary judgment, Supreme Court granted relief to plaintiff, holding that defendant was unconditionally liable on the bond, and to HSBC, finding that the claims made against it by defendant were within the exclusive jurisdiction of the Bankruptcy Court. Defendant appeals.

According to the affidavit of Keith Kammerer, Deputy Bureau Chief of the Office of the Attorney General, the highest possible value of the tax stamps of which HSBC actually took possession was $126,880. Considering that during the three-month period prior to seizure Herkimer purchased $212,559 in stamps with cash, it appears that many, if not all, of the stamps taken by HSBC were properly paid for and, thus, the proceeds remained the property of HSBC. Further considering that the amount still owed to plaintiff, even after deducting the value of all seized tax stamps, exceeds the $2.2 million penal amount of the bond, there is no reason to preclude its enforcement.

Supreme Court so found when it granted plaintiff's motion for summary judgment, holding that the payment on the bond was unconditional upon Herkimer's default and that nothing plaintiff did or did not do vitiated defendant's duty. It rejected

* Prior thereto, in response to a request by HSBC through Herkimer, plaintiff had issued a legal opinion that asserted that a creditor cannot obtain a security interest in tax stamps, but that it could secure an interest in cigarettes which had paid tax stamps which were properly affixed; all unpaid tax stamps were required to be returned to plaintiff.

any claim by defendant that by authorizing HSBC to act as a cigarette agent and by describing the money owed as a "debt" in the Bankruptcy Court filing, plaintiff violated its duty to defendant and thereby negated its obligation as a surety.

"The liability of a surety who is a guarantor of payment accrues upon the default of the principal" (*State of New York v Peerless Ins. Co.*, 117 AD2d 370, 373 [1986] [citation omitted]). Absent contrary agreement, "a creditor has no duty to keep the surety informed of the debtor's financial situation" (*State of New York v Peerless Ins. Co.*, 67 NY2d 845, 847 [1986]). While we recognize that if a creditor releases or discharges collateral to a debt without the consent of the surety, the surety is released from his or her obligations pro tanto (*see Indianapolis Morris Plan Corp. v Karlen*, 28 NY2d 30, 33 [1971]; *Executive Bank of Ft. Lauderdale v Tighe*, 66 AD2d 70, 74-75 [1978]). Defendant here was an unconditional guarantor of payment, not of collection, and the guarantee was not dependent upon any condition precedent other than nonpayment of indebtedness (*see State of New York v Peerless Ins. Co., supra* at 373). For this reason, we can find no basis upon which defendant would be released from its duty as surety to pay on the bond. Notably, with plaintiff having filed a timely claim in Bankruptcy Court, it preserved defendant's ability to pursue Herkimer's assets. Had defendant properly paid on the bond when demand was made, it would have had subrogation rights to pursue the claims it now seeks to assert against HSBC.

Next addressing the issues raised by both defendant and HSBC as to the jurisdiction of Bankruptcy Court and whether the lifting of the stay determined the property interest of the tax stamps seized by HSBC, we note that all civil litigation against the debtor in Bankruptcy Court that directly affects property interests in the bankruptcy estate are subject to an automatic stay (*see* 11 USC § 362 [a]) and the exclusive jurisdiction of Bankruptcy Court (28 USC § 1334 [a], [e]; *see* 28 USC § 157 [a]; *In re Best Prods. Co., Inc.*, 68 F3d 26, 32 [1995]). However, an order granting a creditor relief from the automatic stay will not generally constitute a final judgment on the claim for the purposes of collateral estoppel or res judicata (*see Grella v Salem Five Cent Sav. Bank*, 42 F3d 26, 31-32 [1994]; *In re Pandeff*, 201 BR 865, 870 [1996]).

Here, neither plaintiff nor defendant raised the issue of plaintiff's ownership of the tax stamps before Bankruptcy Court and we do not find that its order lifting the automatic stay finally determined that issue (*see Grella v Salem Five Cent Sav. Bank, supra* at 31; *In re Pandeff, supra* at 870). However,

it is only upon payment of the bond to plaintiff that defendant, as surety, will be subrogated to the rights of plaintiff (*see Matter of RLI Ins. Co., Sur. Div. v New York State Dept. of Labor*, 97 NY2d 256, 264 [2002]) and thus be able to pursue that claim. As there is no evidence that defendant has paid on the bond, no subrogation rights have attached (*see Winkelmann v Excelsior Ins. Co.*, 85 NY2d 577, 582 [1995]). Accordingly, defendant has no basis upon which to advance its claim against both HSBC for foreclosing on all of Herkimer's assets with Bankruptcy Court's approval and plaintiff for then allowing the disposal of those assets by its authorization. We further find no viable claim of unjust enrichment since the amounts owed to plaintiff still exceed the penal amount of the bond (*see Matter of Leland Fox & John Murphy, Inc. [Frankel—Key Bank]*, 111 AD2d 972, 974 [1985]).

Finally, we reject, as premature, any remaining contention that defendant's claim against HSBC should have been summarily decided.

Cardona, P.J., Mercure, Carpinello and Rose, JJ., concur. Ordered that the order and judgment are affirmed, with one bill of costs.